The STATE ex rel. GIBBS, Appellant,

v.

CONCORD TOWNSHIP TRUSTEES, Appellee.

[Cite as *State ex rel. Gibbs v. Concord Twp. Trustees,*
152 Ohio App.3d 387, 2003-Ohio-1586.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2001–L–223.

Decided March 28, 2003.

388

Donald A. Richer, for appellant.

Michael C. Lucas and Geoffrey W. Weaver, for appellee.

JUDITH A. CHRISTLEY, Judge.

{¶ 1} In this accelerated-calendar case, appellant, R.E. Gibbs, appeals from the judgment entry issued by the Lake County Court of Common Pleas, denying his complaint for a writ of mandamus requiring appellee, the Concord Township Trustees, to provide copies of certain public records at a particular copying cost. For the reasons that follow, the judgment of the trial court is affirmed.

{¶ 2} By way of background, on November 27, 2000, appellant commenced this public records mandamus action to compel appellee to provide copies of the requested public records at "actual cost," which appellant proposed was five cents per copy or less. Specifically, appellant alleged that appellee had the ability "to make copies of the requested documents 'in house' using [appellee's] own personnel and equipment. [Appellee] has, however, refused to supply [appellant] with the requested copies at [appellee's] actual cost to make the copies in house, but instead [appellee] contends that it can charge [appellant] the copying costs of an outside contractor."

{¶ 3} In essence, appellant refused to pay the cost incurred by appellee if the copying services of a private contractor were used. Rather, appellant demanded that appellee provide the copies of the requested public records at a rate of five cents per copy. Appellant also sought to recover attorney fees for instituting the mandamus action.

{¶ 4} Appellee responded to the complaint by filing an answer. Therein, appellee admitted that it had an obligation to supply appellant with copies of the public records but "denie[d] that it had the ability to make copies of the requested documents in-house" due to the "voluminous nature of [appellant's] public records request * * *." In an attempt to comply with appellant's public records request, appellee allegedly sought to have a local copying store make copies of the records. Appellee, however, acknowledged that appellant had refused to pay the local copying store's charge for these copies. For this reason, appellee did not make or provide appellant with copies of the requested public records.

{¶ 5} This matter proceeded towards a trial before the court on October 21, 2001. Appellant testified on his own behalf, while appellee presented the testimony of Peggy A. Cusick ("Cusick") and Russell D. Schaedlich ("Schaedlich"). Prior to the commencement of trial, the parties stipulated that the records requested by appellant were public record and that appellant was entitled to copies of these records.

{¶ 6} At trial, appellant explained that he had requested copies of public records relating to the issuance, denial, and appeal of zoning permits, payment of fees, and the grant or denial of variances for the construction of a deck in Concord Township from 1990 to the present. According to appellant, he believed that the disclosure of such information served a public interest.

{¶ 7} As for supplying copies of the requested public records, Cusick, the Clerk/Treasurer for Concord Township, testified that the average cost for the township to make a copy in-house was five cents per page. This cost did not include the labor.

{¶ 8} Schaedlich, the Administrator/Zoning Inspector for Concord Township, testified that approximately 10,000 documents would need to be photocopied in order to respond to appellant's public records request. According to Schaedlich, it would take approximately 44 hours to identify and make copies of such records. In Exhibit D, he indicated that the township did not have the resources to dedicate to this volume of copies.

{¶ 9} At trial, appellee introduced into evidence the cost of having Kinko provide copying services. Pursuant to Kinko's volume pricing, 10,000 copies cost approximately $637, or six cents per copy. In comparison, appellee's cost would be approximately $500 for copying 10,000 documents in house. Thus, if Kinko's were used, appellant would have to pay $137 more.

{¶ 10} After taking the matter under advisement, the trial court issued a lengthy judgment entry on November 5, 2001, denying appellant's complaint for a writ of mandamus. In reaching this determination, the trial court reasoned, in part, that "when a public records request is made pursuant to R.C. 149.43(B)(1) and that request is voluminous in nature, the public office may choose to respond to the request by having photocopies reproduced by an independent contractor and may charge a requesting party the price paid for the independent contractor, so long as the price charged is reasonable and the decision to have the photocopying completed by an independent contractor is also reasonable."

{¶ 11} Accordingly, the trial court denied the complaint for a writ of mandamus as to the specific relief sought by appellant, which demanded that appellee provide copies of the requested public records at five cents per page. Nevertheless, the trial court ordered appellee to supply copies of the requested public

records to appellant "provided that appellant [was willing] to pay the actual price incurred by [appellee] if an independent contractor [was] used."

{¶ 12} From this judgment, appellant appeals, submitting two assignments of error for our consideration:

{¶ 13} "[1.] The trial court committed reversible error in dismissing relator's complaint for a writ of mandamus.

{¶ 14} "[2.] The trial court committed reversible error and abused its discretion in not issuing the writ of mandamus and ordering Concord to pay Mr. Gibbs' attorney fees."

{¶ 15} Before we may address the merits of appellant's first assignment of error challenging the trial court's denial of his complaint for a writ of mandamus, we must determine whether the mandamus action has been rendered moot.

{¶ 16} In his appellate brief, appellant acknowledges that on January 7, 2002, "[appellee] actually delivered copies of substantially all of the requested copies to [appellant]. There were in fact only Five Hundred Forty Five (545) pages. [Appellee] made all copies in house and charged $.06 per page because Kinko's had changed its price for the copies."

{¶ 17} " 'Mandamus does not lie to compel an act that has already been performed.' " *State ex rel. Chapnick v. E. Cleveland City School Bd. of Edn.* (2001), 93 Ohio St.3d 449, 451, 755 N.E.2d 883. The allegations in an appellate brief are not considered part of the trial court record; thus, we are unable to determine whether the original demand was reduced or was only partially complied with. In fact, at oral argument, there was some dispute as to whether appellant had reduced the scope of his original demand, resulting in the lower number of copies provided. Accordingly, there is uncertainty as to whether the original request was actually met.

{¶ 18} Further, we note that this case raises two important issues that are capable of repetition, to wit (1) whether a custodian of public records may utilize a private contractor for copying services in order to respond to a request for copies of public records; and (2) whether a party requesting the copies of public records must pay the cost incurred by the custodian for using the copying services of a private contractor.

{¶ 19} As to these issues, appellant agrees that appellee may, in its discretion, have a private contractor make copies of the public records requested. However, appellant proposes that appellee should have to assume any difference in cost between the private contractor's charge and appellee's charge for producing the copies.

{¶ 20} Pursuant to R.C. 149.43(B)(1), the right to request copies of public records is conditioned upon the payment of a fee:

{¶ 21} "[A]ll public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. * * * [U]pon request, a public office or person responsible for public records shall make copies available *at cost*, within a reasonable period of time." (Emphasis added.)

{¶ 22} While the term "at cost" is not statutorily defined in R.C. 149.43, the term "actual cost" as used in R.C. 149.43(E)(1) means the following:

{¶ 23} " 'Actual cost' means the cost of depleted supplies, records storage media costs, actual mailing and alternative delivery costs, or other transmitting costs, and any direct equipment operating and maintenance cost, *including actual costs paid to private contractors for copying services.*" (Emphasis added.) R.C. 149.43(E)(2)(a).

{¶ 24} Thus, the focus of this case is the whether the term "at cost" as used in R.C. 149.43(B)(1) is synonymous with the term "actual cost" as defined in R.C. 149.43(E)(2)(a).

{¶ 25} As to this point, appellant maintains that the statutory definition of "actual cost" is specifically restricted to R.C. 149.43(B)(3) and (E)(1). According to appellant, nowhere in the statute does it state that the definition of "actual cost" applies to a request for documents made under R.C. 149.43(B)(1). Thus, appellant concludes that the statutory definition of "actual cost" was inapplicable to determine the cost he had to pay for the copies because appellant did not intend to use the copies of the public records for any commercial purpose.

{¶ 26} In *State ex rel. Warren Newspapers, Inc. v. Hutson* (1994), 70 Ohio St.3d 619, 625, 640 N.E.2d 174, the Supreme Court of Ohio held that a public office could charge only the "actual cost" for producing a copy:

{¶ 27} *"Although the court has not defined 'at cost,'* it has been stated that *a public office, in its sound discretion, may adopt a reasonable policy setting a fee for copies obtained from the public office, with the fee reflecting the actual cost involved in making a copy* unless the cost is otherwise set by statute. 1989 Ohio Atty.Gen.Ops. No. 89–073; cf. *State ex rel. Nelson v. Fuerst* (1993), 66 Ohio St.3d 47, 48, 607 N.E.2d 836, 838, where the court referred in *dicta* to *'reasonable cost'* in a public records case. Since the General Assembly could have, but failed to, specify 'reasonable cost,' *we hold that R.C. 149.43(B) means 'actual cost.'* " (Emphasis added in part.)

{¶ 28} Thus, pursuant to *Hutson* and the statutory construction rule of in pari materia, the requirement in R.C. 149.43(B)(1) to have public officials make copies of public records available "at cost" authorizes the public office to charge

only the "actual cost" of duplicating records. Furthermore, the statutory definition of "actual cost" includes the "actual costs paid to private contractors for copying services." R.C. 149.43(E)(2)(a).

{¶ 29} "Actual cost," however, would not include the cost of labor for the public employee who responded to the request to make copies of public records because the employee has already been compensated for performing his/her duties concerning the records request. *Hutson*, 70 Ohio St.3d at 626, 640 N.E.2d 174. See, also, 1999 Ohio Atty.Gen.Ops. No. 99–012 (providing that "[f]or purposes of determining the fee that may be charged pursuant to R.C. 149.43(B) for a customized document created by coordinating and compiling information from public records, 'at cost' means actual cost, exclusive of any charges for employee labor or computer programming time involved in either the preparation or actual production of the document").

{¶ 30} Appellant also argues that "cost" and "actual cost" have individual meanings in the accounting profession. However, these statutes at issue are directed to and are for the benefit of the general public, not the accounting profession. Hence, accounting terms of art are not controlling, particularly where such a reading would create conflict instead of harmony with a consistent and logical interpretation.

{¶ 31} In light of the foregoing legal principles, we hold that the term "at cost" as used in R.C. 149.43(B)(1) means "actual cost" as defined in R.C. 149.43(E)(2)(a). *Hutson*, 70 Ohio St.3d at 625, 640 N.E.2d 174. Furthermore, we agree with the trial court that a public office may choose to employ the services of a private contractor to respond to a request for copies of public records so long as the decision to do so is reasonable.

{¶ 32} For instance, the decision to employ the services of a private contractor cannot be used to make it more difficult or create an unreasonable obstacle for the individual seeking to obtain copies of the public records. If, however, the public office has limited photocopying resources or labor, then it would be reasonable for the public office to employ the services of a private contractor.

{¶ 33} Similarly, there may be circumstances where the public records are such that they cannot be removed from the office of the public entity, i.e., for security reasons or to remain accessible to the public. Thus, the public office could also contract for in-house copying accomplished by the acquisition of short-term rental equipment and temporary help or overtime sufficient to accomplish the requested project. Again, the critical factor is reasonableness under the circumstances in determining whether to resort to additional in-house resources beyond normal staffing and equipment or an outside source to meet the copy request.

{¶ 34} There may also be instances when the public office may be able to comply without disrupting its normal functions but only over an extended period of time. In that instance, the public office can offer the requesting party the options of (1) having the documents produced through a faster method by employing temporary personnel and equipment, (2) using an external private contractor, or (3) having the documents produced in-house by the public office's normal staff and equipment in a less efficient and more time-consuming manner. This approach is consistent with R.C. 149.43(B)(2) in that the legislature was obviously concerned with the public office's ability to promptly comply with the request for copies of public records "as an integral part of the *normal* operations of the public office."[1] (Emphasis added.)

{¶ 35} For these reasons, we agree that the trial court correctly determined that it was reasonable for appellee initially to plan to utilize a private contractor, such as Kinko's, to process appellant's request for what was believed to be 10,000 copies of certain public records and that appellee could charge appellant the actual cost incurred for using the copying services of a private contractor. *Hutson*, 70 Ohio St.3d at 625, 640 N.E.2d 174; R.C. 149.43(E)(2)(a). Accordingly, the trial court did not err in denying appellant's complaint for a writ of mandamus.

{¶ 36} As an alternate argument, appellant suggests that the trial court should have granted the complaint for a writ of mandamus by ordering appellee to provide the requested copies to appellant at the price charged by an independent contractor.

{¶ 37} Appellant's mandamus action, however, did not request such relief. Rather, *appellant's complaint for a writ of mandamus specifically sought to compel appellee to provide copies of the requested public records at a rate of five cents per page.* Accordingly, the trial court could not grant appellant's complaint for a writ of mandamus for relief that was not requested by appellant. For these reasons, appellant's first assignment of error is without merit.

{¶ 38} In assignment of error two, appellant challenges the trial court's denial of his request for attorney fees for instituting the mandamus action. According to appellant, the trial court abused its discretion by failing to issue the writ of

---

1. R.C. 149.43(B)(2) reads as follows: "If any person chooses to obtain a copy of a public record in accordance with division (B)(1) of this section, the public office or person responsible for the public record shall permit that person to choose to have the public record duplicated upon paper, upon the same medium upon which the public office or person responsible for the public record keeps it, or upon any other medium upon which the public office or person responsible for the public record determines that it reasonably can be duplicated as an integral part of the normal operations of the public office or person responsible for the public record."

mandamus and failing to conduct a hearing to determine appellant's claim for attorney fees.

{¶ 39} As discussed in the first assignment of error, the trial court did not err in denying appellant's complaint for a writ of mandamus. Furthermore, an evidentiary hearing on a motion for attorney fees is not always required. *Chapnick*, 93 Ohio St.3d at 452, 755 N.E.2d 883, citing *In re Removal of Osuna* (1996), 116 Ohio App.3d 339, 342, 688 N.E.2d 42 (holding that " 'a hearing is not always necessary before overruling a motion for attorney fees' "). While it may be good practice to conduct a hearing, R.C. 149.43 does not expressly require a hearing on the request for attorney fees under all circumstances.

{¶ 40} Despite the foregoing conclusion, evidence on the issue of attorney fees was presented as part of the October 12, 2001 bench trial; therefore, this court can proceed to review whether the trial court abused its discretion in denying appellant's request for attorney fees.

{¶ 41} R.C. 149.43(C) permits the award of reasonable attorney fees to anyone who institutes a mandamus action. However, such awards are not mandatory. *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 54, 689 N.E.2d 25; *State ex rel. Olander v. French* (1997), 79 Ohio St.3d 176, 179, 680 N.E.2d 962. Instead, "R.C. 149.43(C) allows a court to use its discretion in awarding such fees." *Olander* at 179, 680 N.E.2d 962. The determination of the trial court to grant or deny attorney fees will not be reversed absent an abuse of discretion. Id. at 179–180, 680 N.E.2d 962.

{¶ 42} When considering whether to award attorney fees pursuant to R.C. 149.43(C), the following four-prong test is applied: "(1) a person makes a proper request for public records pursuant to R.C. 149.43, (2) the custodian of the public records fails to comply with the person's request, (3) the requesting person files a mandamus action pursuant to R.C. 149.43 to obtain copies of the records, and (4) the person receives the requested public records only after the mandamus action is filed, thereby rendering the claim for a writ of mandamus moot." *State ex rel. Pennington v. Gundler* (1996), 75 Ohio St.3d 171, 661 N.E.2d 1049, syllabus.

{¶ 43} As to the first requirement, the parties stipulated and the trial court determined that the records requested by appellant were public records, and that appellant was entitled to copies of the requested records under R.C. 149.43(B)(1). Therefore, appellant made a proper request for public records under R.C. 149.43.

{¶ 44} In addition, the third and fourth requirements are also satisfied. Appellant filed this mandamus action to obtain copies of the requested public

records at a rate of five cents per page. Although the trial court denied appellant's complaint for a writ of mandamus, appellant acknowledged in his appellate brief that he received copies of some of the records only after this action was filed. Thus, we must consider the second requirement, that is, whether appellee failed to comply with appellant's request for copies of the public records.

{¶ 45} In applying the four-prong test set forth in *Pennington,* a court should also consider "the reasonableness of the government's failure to comply with the public records request and the degree to which the public will benefit from the release of the records." *Olander,* 79 Ohio St.3d at 179, 680 N.E.2d 962. See, also, *Wadd,* 81 Ohio St.3d at 54, 689 N.E.2d 25; *State ex rel. Findlay Publishing Co. v. Hancock Cty. Bd. of Commrs.* (1997), 80 Ohio St.3d 134, 139, 684 N.E.2d 1222; *State ex rel. Gannett Satellite Info. Network, Inc. v. Shirey* (1997), 78 Ohio St.3d 400, 404, 678 N.E.2d 557; *Hutson,* 70 Ohio St.3d at 626, 640 N.E.2d 174. This is because attorney fees are regarded as punitive in nature. *Gannett,* 78 Ohio St.3d at 404, 678 N.E.2d 557; *Hutson,* 70 Ohio St.3d at 626, 640 N.E.2d 174. Applying these factors to the instant case mandates a denial of appellant's request for attorney fees.

{¶ 46} In its November 5, 2001 judgment entry, the trial court found that "[t]he records of which [appellant] seeks copies may demonstrate alleged malfeasance and/or misfeasance of [appellee] and its agents and employees in regards to decks[.]" From this, the trial court concluded that "the disclosure of such information allegedly could serve a great public benefit."

{¶ 47} Appellee, however, was willing to provide 10,000 documents at its actual cost as quoted by Kinko's. The dispute concerned which charge was the "actual cost" of these copies. Appellee's position to charge appellant the cost incurred by a private contractor, such as Kinko's, was supported by *Hutson,* supra, and the statutory definition of "actual cost" provided in R.C. 149.43(E)(2)(a).

{¶ 48} Furthermore, no evidence was presented to support appellant's contention that appellee acted in bad faith when it estimated at trial that approximately 10,000 documents would need to be copied in order to comply with appellant's request for public records. Although appellant acknowledges in his appellate brief that appellee supplied 545 pages in January 2002, there is no evidence tending to show that appellee knew at trial that the requested number of copies to be made would be reduced by appellant or would be far less than the 10,000–document estimate originally provided.

{¶ 49} Given that the complaint for a writ of mandamus was without merit, appellant was not entitled to an award of attorney fees. *State ex rel. WLWT–*

*TV5 v. Leis* (1997), 77 Ohio St.3d 357, 362, 673 N.E.2d 1365; *State ex rel. The Logan Daily News v. Jones* (1997), 78 Ohio St.3d 322, 324, 677 N.E.2d 1195, *State ex rel. The Cincinnati Enquirer v. Dupuis,* 147 Ohio App.3d 561, 2002-Ohio-2883, 771 N.E.2d 340, at ¶ 10.

{¶ 50} Based on the foregoing analysis, appellant's assignments of error are without merit, and the judgment of the trial court is affirmed.

Judgment affirmed.

DONALD R. FORD, P.J., and DIANE V. GRENDELL, J., concur.