THE STATE EX REL. GAMBILL *v.* OPPERMAN, ENGINEER.

[Cite as *State ex rel. Gambill v. Opperman,* 135 Ohio St.3d 298,

2013-Ohio-761.]

*Mandamus—Public records—Public record intertwined with copyright-protected software.*

(No. 2012-1296—Submitted January 8, 2013—Decided March 7, 2013.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} This is an original action for a writ of mandamus to compel respondent, Scioto County Engineer Craig Opperman, to provide a copy of his office's electronic data compilation for maps and aerial photographs of all the property in Scioto County and to provide paper copies of the maps and photographs. Because relator, Robert Gambill, has not established his entitlement to the requested extraordinary relief by the required clear and convincing evidence, we deny the writ.

**Facts**

{¶ 2} Under R.C. 5713.09, a board of county commissioners "may designate the county engineer to provide for making, correcting, and keeping up to date a complete set of tax maps of the county." The Scioto County Board of Commissioners has not requested that the Scioto County engineer make, correct, or update a set of tax maps and did not provide funding for the preparation of tax maps from December 2006 to March 2012. Partial funding for the engineer's preparation of tax maps was provided later in 2012.

{¶ 3} The Scioto County Engineer's Office does not maintain tax maps of individual properties in the county. Instead, the office maintains electronic

data files from which the maps may be created when a person inputs search parameters. The data files require a software program to enable a computer to create a readable tax map, and without the program, the data cannot be compiled in a readable format. The engineer's office provides free public access to the data via a public terminal during its regular business hours and charges $1 for an 11-by-17-inch copy of a tax map and $2 for an 11-by-17-inch copy of a tax map with a black-and-white aerial photograph.

{¶ 4} The tax maps include information derived from deeds recorded in the Scioto County Recorder's Office, aerial photographs taken by a company named Woolpert, Inc. ("Woolpert"), and text files generated by another company, named Manatron, Inc. ("Manatron"), using information from the auditor's office. Woolpert is an engineering consulting firm that was hired by the board of county commissioners to develop the engineer's information system, and Manatron provided software to manage the property information collected by the auditor's office. Information from the auditor's office is downloaded from its Manatron system to the engineer's office and goes through applications developed by Woolpert to allow the information to, as Opperman explains, "attach to shape files" for the engineer's office. The files are then manipulated for input into a system created by Environmental Systems Research Institute, Inc. ("Esri") to allow the information to be compiled for specific tax maps created in accordance with a requester's search parameters.

{¶ 5} Esri commercially develops and licenses geographic-information systems software. Esri software has numerous copyright registrations, which are protected under federal copyright law. In 2005, the Scioto County Engineer's Office purchased an "ArcGIS Publisher Single Use Unkeyed License" and "Arcview Single Use Unkeyed License" from Esri. Use of these products by the engineer's office is subject to a license agreement under which no part of the

software, data, or web services may be reproduced or transmitted to third parties without Esri's express written permission.

{¶ 6} In 2006, the Scioto County Engineer offered the electronic data files for the tax maps and aerial photographs to the public for $200, with updates available for $50. These data files were viewable through a free Esri ArcReader, which is a different program from the one purchased and used by the engineer's office to view tax maps.

{¶ 7} Relator, Robert Gambill, owns and operates a real-estate-appraisal business in Scioto County, Ohio. He uses maps and aerial photographs of properties in making his appraisals. In 2006, Gambill purchased a disk permitting him to display the tax maps and aerial photographs created in 1999 and 2000 on his own computer and then print them.

{¶ 8} In April 2007, Manatron updated the systems information for the auditor's office, and the new system was not compatible with the system in the engineer's office, meaning that the property information could no longer be updated. In April 2008, the engineer's office hired Woolpert to make the systems compatible.

{¶ 9} Due to the upgraded systems, the engineer's office can no longer create data files for purchase by the public. That is, without the Esri software that is entitled to copyright protection, the data cannot be compiled in a readable format. Gambill purchased an update to the data files in 2009 for $50, but he was later provided with a refund due to the incompatibility of the data files with the updated systems.

{¶ 10} In June 2008, the Scioto County Board of Commissioners appointed respondent, Craig Opperman, Scioto County engineer. By letter dated September 6, 2011, Gambill requested that Opperman provide him, at actual cost, with copies of certain records for the period from January 1, 2010, to September 6, 2011, including "[c]opies of any electronic database of maps and aerial

3

photographs of all Scioto County properties" and "[c]opies of maps and aerial photographs of all Scioto County properties." Opperman responded by noting that the engineer's office did not maintain maps and aerial photographs of properties in any format other than electronic and that individual maps and photographs are generated in response to a requester's search parameters. He also noted:

> The Scioto County Engineer's Office formulates each tax map for viewing through the use of Esri software that is protected under United States copyright law and other international copyright treaties and conventions. The Scioto Engineer's Office is not permitted to reproduce or transmit this program to unlicensed third parties. The Scioto County Engineer's Office may contact Woolpert[] to extract the information necessary to formulate a tax map, absent the Esri software. The cost of the extraction by Woolpert[] was estimated at a minimum of $2,000.00 plus the cost of a hard drive.

{¶ 11} Opperman's quoted charge of "$2,000.00 plus the cost of a hard drive" was based on Woolpert's estimate to retrieve the requested electronic data by separating it from the copyright-protected Esri software files.

{¶ 12} On July 31, 2012, Gambill filed this action for a writ of mandamus to compel Opperman to provide copies of the requested records at actual cost as well as an award of attorney fees and costs. After Opperman filed an answer, we granted an alternative writ, 133 Ohio St.3d 1408, 2012-Ohio-4650, 975 N.E.2d 1027, and the parties submitted evidence and briefs.

{¶ 13} This cause is now before the court for our consideration of the merits.

**Legal Analysis**

*Mandamus*

{¶ 14} "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C)(1). Although the Public Records Act is accorded liberal construction in favor of access to public records, "the relator must still establish entitlement to the requested extraordinary relief by clear and convincing evidence." *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 16. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

*Records: Tax Maps and Aerial Photographs of Individual Properties
and the Electronic Database*

{¶ 15} At issue in this case is Gambill's request that the engineer's office provide him with (1) copies of maps and aerial photographs of all the properties in Scioto County in paper form and (2) the electronic database from which the documents can be created.

{¶ 16} Insofar as Gambill requests paper copies of maps and aerial photographs of all Scioto County properties, the engineer's office does not maintain the data in this manner. Instead, each requested tax map is a new image that the computer creates when the requester inputs search terms. Opperman has "no duty to create or provide access to nonexistent records." *State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, 861 N.E.2d 530, ¶ 15. Gambill

may obtain paper copies of maps and aerial photographs of properties in Scioto County by inputting search terms into the computer at the engineer's office and paying the cost for each document printed.

{¶ 17} Gambill's main request, however, is for a copy of the electronic database that Opperman maintains. The database contains the information from which tax maps and aerial photographs are created when search parameters are entered into the free public terminal in the engineer's office.

{¶ 18} Opperman contends that this database does not constitute a record for purposes of R.C. 149.43. R.C. 149.43(A)(1) defines "public record" for purposes of the Public Records Act as "records kept by any public office, including, but not limited to, * * * county [offices]." The Scioto County engineer is a public official, and his office is a public office. R.C. 149.011(G) provides that for R.C. Chapter 149,

"[r]ecords" includes any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.

{¶ 19} R.C. 1306.01(G) defines "electronic record" as "a record created, generated, sent, communicated, received, or stored by electronic means." For the requested electronic database in the engineer's office to be a record under R.C. 149.011(G) and 149.43, it must constitute (1) documents, devices, or items, including electronic records, (2) created or received by or coming under the jurisdiction of the engineer's office, (3) that serve to document the organization,

functions, policies, decisions, procedures, operations, or other activities of the office. *See State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 19.

**{¶ 20}** Notwithstanding Opperman's contentions, the requested electronic database is a record for purposes of the Public Records Act. It is an electronic record created by the engineer's office by compiling data from various sources, including deeds recorded in the auditor's office, and it serves to document the activities of the engineer's office. The engineer's office uses the copyrighted Esri software to allow the database to be accessed by the public to create tax maps that correspond to specific search parameters entered into a computer.

*Exemptions from Disclosure: Copyright Law*

**{¶ 21}** Opperman contends that if the requested electronic database is a record for purposes of R.C. 149.43, it is exempt from disclosure because it is inextricably intertwined with the copyright-protected Esri software.

**{¶ 22}** R.C. 149.43(A)(1)(v) exempts "[r]ecords the release of which is prohibited by state or federal law" from the definition of "public record." Copyright law constitutes a federal law that exempts applicable records from disclosure under the Public Records Act. 17 U.S.C. 101 et seq.; *see, e.g., State ex rel. Perrea v. Cincinnati Pub. Schools*, 123 Ohio St.3d 410, 2009-Ohio-4762, 916 N.E.2d 1049, ¶ 19-21 (trade secrets are exempt from disclosure under R.C. 149.43).

**{¶ 23}** Gambill does not claim that the Esri software is subject to disclosure under R.C. 149.43. To the contrary, he expressly acknowledges that "proprietary software programs are not public records and need not be disclosed under R.C. 149.43." And the fair-use exception to the federal copyright statute is inapplicable because Gambill wants the requested database for commercial purposes related to his appraisal business. 17 U.S.C. 107; *compare State ex rel. Rea v. Ohio Dept. of Edn.*, 81 Ohio St.3d 527, 532, 692 N.E.2d 596 (1998).

**{¶ 24}** Gambill instead claims that he is not requesting the exempt software; he is requesting the engineer's electronic database, which includes the raw data used to create tax maps and access aerial photographs. But the engineer's office cannot separate the requested raw data from the exempt Esri software files.

**{¶ 25}** Therefore, consistent with other cases in which nonexempt materials are inextricably intertwined with exempt materials, the nonexempt records are not subject to disclosure under R.C. 149.43 insofar as they are inseparable. *See State ex rel. Master v. Cleveland*, 76 Ohio St.3d 340, 342, 667 N.E.2d 974 (1996) ("we find that most of the subject records are exempt under the R.C. 149.43(A)(2)(a) uncharged-suspect exception because the protected identities of uncharged suspects are inextricably intertwined with the investigatory records"); *State ex rel. Dawson v. Bloom-Carroll Local School Dist.*, 131 Ohio St.3d 10, 2011-Ohio-6009, 959 N.E.2d 524, ¶ 29 ("The withheld records are either covered by the attorney-client privilege or so inextricably intertwined with the privileged materials as to also be exempt from disclosure").[1]

*Providing Electronic Copies of Requested Records*

*at Actual Cost*

**{¶ 26}** Notwithstanding the inability of the engineer's office to separate its requested electronic database from the exempt Esri software, it received an estimate from Woolpert—the company that the engineer's office had hired to make its information system compatible with that of the auditor's office after the auditor's office updated its system in 2007—to extract the underlying electronic data from the intertwined exempt software. Woolpert estimated that it would cost

---

1. In *State ex rel. Anderson v. Vermilion*, 134 Ohio St.3d 120, 2012-Ohio-5320, 980 N.E.2d 975, at ¶ 20-23, we noted that the public office in *Dawson* had properly responded to the records request by providing the requester with summaries of the records.

$2,000, plus the cost of a hard drive. The engineer's office then passed along this quote to Gambill.

{¶ 27} Gambill claims that the charge does not reflect the cost of copying the requested electronic database. In general, R.C. 149.43(B)(1) provides that copies of public records shall be made available "at cost." "This means *actual* cost and does not include labor costs for employee time to respond to the request and make the copies." (Emphasis sic.) *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 43; *see also State ex rel. Warren Newspapers, Inc. v. Hutson*, 70 Ohio St.3d 619, 625, 640 N.E.2d 174 (1994) ("Since the General Assembly could have, but failed to, specify 'reasonable cost,' we hold that R.C. 149.43(B) means 'actual cost' ").

{¶ 28} For bulk commercial special extraction requests made to the bureau of motor vehicles, the bureau is authorized to adopt rules allowing it to charge the requester the actual cost to the bureau in fulfilling the request, and the phrase "actual cost" in that instance "means the cost of depleted supplies, records storage media costs, actual mailing and alternative delivery costs, or other transmitting costs, and any direct equipment operating and maintenance costs, *including actual costs paid to private contractors for copying services.*" (Emphasis added.) R.C. 149.43(F)(2)(a).

{¶ 29} Notwithstanding that R.C. 149.43(F)(2) limits the applicability of the definition of "actual cost" to bulk commercial special extraction requests made to the bureau of motor vehicles, courts have held that this definition, which includes "actual costs paid to private contractors," applies in general to R.C. 149.43(B)(1) requests for copies of public records, as long as the decision to employ the services of the private contractor is reasonable. *See State ex rel. Gibbs v. Concord Twp. Trustees*, 152 Ohio App.3d 387, 2003-Ohio-1586, 787 N.E.2d 1248, ¶ 25-28, 31-32 (11th Dist.) (applying the definition of "actual cost"

to the term "at cost" in R.C. 149.43(B)(1)). We adopt this holding and apply it here.

**{¶ 30}** Opperman acted reasonably in asking Woolpert to provide an estimate to extract the requested electronic data from the exempt Esri software files. The uncontroverted evidence establishes that (1) because of the 2007 update to the auditor's system, the engineer's office had to update its computer system to make it compatible, (2) the Esri software is required to compile the data into a readable format, (3) the engineer's office cannot separate the data from the Esri software files, and (4) Woolpert would charge a minimum fee of $2,000 plus the cost of a hard drive to extract the data that Gambill requested. There is no evidence here that Opperman or the engineer's office intentionally combined the requested raw data with the exempt software so as to circumvent the Public Records Act.

**{¶ 31}** Under these circumstances, it is reasonable to include the cost that the engineer's office will incur from Woolpert in extracting the requested electronic data and copying it onto a hard drive as part of the actual cost of providing the requested record. Gambill's reliance on *Data Trace*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, to argue otherwise, is misplaced. In that case, we held that the relators had to pay a county recorder's office only the actual cost of a disc—$1—rather than $2 for each image on the disc. *Data Trace* does not concern requested data that was intertwined with exempt software or the cost that would be charged by a private company to extract the requested data.[2]

---

2. This case is also distinguishable from *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, in which the court held that a board of county commissioners bore the expense of recovering e-mails that constituted public records that were deleted in contravention of the county's records-retention policy. No public records were deleted in violation of an adopted records-retention policy by the engineer's office here.

*Providing Paper Copies of Records*

*at Actual Cost*

{¶ 32} Gambill next claims that by charging more than 15 cents per page for paper copies of tax maps and aerial photographs printed out on the office's public terminal, the engineer's office is charging more than its actual cost.

{¶ 33} As explained previously, "actual cost" for purposes of R.C. 149.43 includes the "cost of depleted supplies, records storage media costs, actual mailing and alternative delivery costs, or other transmitting costs, and any direct equipment operating and maintenance costs." R.C. 149.43(F)(2)(a); *see also Warren Newspapers*, 70 Ohio St.3d at 625-626, 640 N.E.2d 174 (the phrase "at cost" in R.C. 149.43(B) means actual cost); *State ex rel. Strothers v. Gorden*, 8th Dist. No. 73910, 1998 WL 269076, *1 (May 21, 1998) (uncontested evidence of city's actual cost in making copies of public records included "paper, toner and equipment related costs, such as machine maintenance and electricity").

{¶ 34} Opperman charges $1 for an 11-by-17-inch copy of a tax map and $2 for an 11-by-17-inch tax map with a black-and-white aerial photograph. Opperman submitted evidence showing that those charges are less than the office's actual cost to produce the copies.

{¶ 35} Although we might question the viability of these charges, Opperman has supported them with his evidence, and Gambill has not submitted clear and convincing evidence to the contrary. Therefore, Gambill has not established that Opperman is acting in violation of his duties under R.C. 149.43(B)(1) to provide copies of the requested records at cost.

*Attorney Fees*

{¶ 36} Because Gambill's public-records mandamus claim lacks merit, he is not entitled to an award of attorney fees. *Dawson*, 131 Ohio St.3d 10, 2011-Ohio-6009, 959 N.E.2d 524, ¶ 34.

**Conclusion**

{¶ 37} Based on the foregoing, Gambill has not established his entitlement to the requested extraordinary relief in mandamus by the requisite clear and convincing evidence. Therefore, we deny the writ.

Writ denied.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 38} The county engineer in this case has intertwined public records with proprietary software and expects citizens seeking public records to pay an exorbitant price to untie the knot. A person seeking public records should expect to pay the price for copying the records, but not the price for a public entity's mistake in purchasing inefficient software. Will every citizen asking for what relator, Robert Gambill, seeks—access to records that the majority acknowledges are public records—also have to pay $2,000? The holding in this case encourages public entities desiring secrecy to hide public records within a software lockbox and require individual citizens to provide the golden key to unlock it.

_____

Brian J. Laliberte Co., L.P.A., and Brian J. Laliberte; and the Law Offices of Lynanne Wolf, L.L.C., and Lynanne Wolf, for relator.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Danielle M. Parker, Assistant Prosecuting Attorney, for respondent.

_____