[Cite as *Ludlow v. Ohio Dept. of Health*, 2021-Ohio-2651.]

| RANDY LUDLOW | Case No. 2021-00040PQ |
| --- | --- |
| Requester | Special Master Jeff Clark |
| v. | REPORT AND RECOMMENDATION |
| OHIO DEPARTMENT OF HEALTH | |
| Respondent | |

{¶1} The Ohio Public Records Act (PRA) requires copies of public records to be made available to any person upon request. The state policy underlying the PRA is that open government serves the public interest and our democratic system. To that end, the public records statute must be construed liberally in favor of broad access, with any doubt resolved in favor of disclosure of public records. *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 6. This action is filed under R.C. 2743.75, which provides an expeditious and economical procedure to enforce the PRA in the Court of Claims.

**Request for Ohio Death Data Records**

{¶2} Beginning on April 20, 2020, requester Randy Ludlow, then a reporter for the Columbus Dispatch, made public records requests to respondent Ohio Department of Health (ODH) for first all and then selected portions of the ODH Electronic Death Reporting System (EDRS) database. ODH initially denied the requests, but later downloaded and delivered all selected EDRS data except the names and addresses of decedents. (Complaint at 3-19.) On January 26, 2021, Ludlow made the final, comprehensive request at issue in this action:

> Please provide a copy of the Electronic Death Reporting System database -- in digital spreadsheet form -- of all death certificates delivered to the department from March 1, 2020, to Jan. 26, 2021 by all local health departments in the state.

> We acknowledge that the department has provided a copy of the database -- except for names and addresses which it insists are exempt from release -- and file this request to update the dates for which the database is sought.
>
> We continue to contend that the names and addresses in the death certificate database are public record and again seek their release.

(*Id.* at 20.) On January 28, 2021, Ludlow filed a complaint pursuant to R.C. 2743.75 alleging denial of access to public records in violation of R.C. 149.43(B). Following unsuccessful mediation, ODH filed a response to requester's complaint and motion to dismiss (Response) on April 23, 2021. On May 10, 2021, Ludlow filed a reply. On May 17, 2021, ODH filed a sur-reply.

**Motion to Dismiss**

{¶3} To dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt that the claimant can prove no set of facts warranting relief after all factual allegations of the complaint are presumed true and all reasonable inferences are made in claimant's favor. *State ex rel. Findlay Publishing Co. v. Schroeder*, 76 Ohio St.3d 580, 581, 669 N.E.2d 835 (1996). As long as there is a set of facts consistent with the complaint that would allow the claimant to recover, dismissal for failure to state a claim is not proper. *State ex rel. V.K.B. v. Smith*, 138 Ohio St.3d 84, 2013-Ohio-5477, 3 N.E.3d 1184, ¶ 10.

{¶4} ODH argues the complaint fails to state a claim because, 1) the request is for an entire database, 2) the request requires a search, and 3) the request seeks information exempt from disclosure under R.C. 3701.17(A)(2). On review, none of these defenses is conclusively shown on the face of the complaint and attachments. Moreover, as the matter is now fully briefed these arguments are subsumed in ODH's defense on the merits. It is therefore recommended that that the motion to dismiss be denied.

**Initial Burden of Proof**

{¶5} A requester must establish a public records violation by clear and convincing evidence. *Hurt v. Liberty Twp.*, 2017-Ohio-7820, 97 N.E.3d 1153, ¶ 27-30 (5th Dist.). At the outset, the requester bears the burden to show that he seeks identifiable public records pursuant to R.C. 149.43(B)(1). *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, Slip Opinion No. 2020-Ohio-5371, ¶ 33.

**The Request Identifies Existing Records**

{¶6} Each death in Ohio is documented with a local registrar of vital statistics. R.C. 3705.16(B). The local registrar, attending physician or coroner, and others complete the death certificate data using electronic or paper death certificate forms prescribed by ODH. R.C. 3705.08(A) and (D); R.C. 3705.16(C); OAC 3701-5-02(A)(2) Certificate of Death (Appendix B, dated 6/23/2016). (*See* Response, Sorrell Aff. ¶ 7 – Exh. A at ¶ 7.) The local registrar obtains a certificate number from the state Electronic Death Registration System (EDRS) and transmits the completed death certificate to the ODH office of vital statistics. R.C. 3705.07(A). ODH verifies the information and certificates received from the local registrar, secures omitted information as necessary, and maintains the completed death certificate data in its records management system. R.C. 3705.02, 3705.07(A). As ODH's record copy of Ohio death certificates, the EDRS database is the electronic equivalent of a file cabinet of physical death certificates.

{¶7} Any person may obtain a copy of any death certificate from the EDRS, which ODH prints out and certifies. R.C. 3705.23(A)(1); R.C. 3705.01(O). There is no limitation on who may obtain death certificates, or for what purpose. ODH routinely uses EDRS data to create "a monthly public record (the Deceased Ohioans File)." (Complaint at 7-8.) ODH also publishes leading causes of death and other mortality statistics as "an

important component of public health surveillance and assessment."[1] The electronic death data received, checked, maintained, and used to perform and document the functions, operations, and other activities of ODH thereby "exists" as a record of the office. R.C. 149.011(G); *See State ex rel. Data Trace Info. Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 38; *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 7.

{¶8} A data dictionary or Death Data File layout, labeled the "Monthly statistical mortality file description" was provided to Ludlow to inform his selection of available death certificate .cvs columns.[2] (Response, Sorrell Aff. Exh. B.) The EDRS is programmed with a Reports function, supported by a Reports Wizard. (Sorrell Aff. – Exh. G – EDRS Menu Screen Shots.) EDRS is also programmed with a Batch > Export function used by, among others, funeral directors to download data sorted by date and available fields. (*Id.*, Exh. D, p. 50-60 and Exh. G.) ODH can and has exported multiple categories of the EDRS database, up to and including the full Death Data file set. (Response, Sorrell Aff. – Exh. A at ¶ 4.)[3] At least two department databases – the EDRS itself and the EnterpriseDataWarehouseSecure Secure Mortality Module – are programmed to pull and export data from the EDRS Death Data file. The latter can export any or all Death Data File content in various formats. (Response at 3.) Individual columns can be redacted. (Complaint at 7.) For more detail on the capabilities of ODH database software and relevant law, *see Miller v. Ohio Dept. of Health*, Ct. of Cl. No. 2020-00618PQ, 2021-Ohio-996 at ¶ 10-20.

---

[1]     https://odh.ohio.gov/wps/portal/gov/odh/explore-data-and-stats/published-reports/data-and-stats-mortality-leading-cause-reports (Accessed June 3, 2021.) (Complaint at 6-7.)

[2] The Comma Separated Values (CSV) format uses commas to separate alphanumerical data fields. CSV files are often used for exchanging data between different applications and formats, such as database and spreadsheet programs. https://en.wikipedia.org/wiki/Comma-separated_values (Accessed June 7, 2021.)

[3] ODH refers to the use of database output functions as "creating a customized report." It provides no evidence that using these functions requires adding new coding or programming to the existing software. *See Miller* at ¶ 13-17.

{¶9} ODH thus possesses the death certificate data, the office software to download it as requested, and experience in performing such downloads. The special master finds this is clear and convincing evidence that Ludlow requested an existing ODH record.

**The Request Does Not Require a "Search" Through the Database**

{¶10} ODH is fully capable of and practiced in exporting data from the EDRS. Nevertheless, it argues

> Further, the Department is not required to search the database to locate records that meet specific criteria. *State ex rel. Shaughnessy v. City of Cleveland* 149 Ohio St.3d 612, 614-615, 76 N.E 3d 1171, 1175 (2016).

(Response at 5.) Retrieving reasonably identified records from where they are maintained is the statutory duty of every public office under the Public Records Act. R.C. 149.43(B)(2). Straightforward retrieval of records does not constitute a search or research by the office. Instead, "to constitute improper research, a record request must require the government agency to either search through voluminous documents for those that contain certain information or to create a new document by searching for and compiling information from existing records." (Citations omitted.) *State ex rel. Carr v. London Corr. Inst.*, 144 Ohio St.3d 211, 2015-Ohio-2363, 41 N.E.3d 1203, ¶ 22.

{¶11} The *Shaughnessy* case relied on by ODH involved complex requests for a police department to, *e.g.*, "search its database for reports that involved (1) incidents of "aggravated assaults" or "assaults," (2) occurring within a specific geographical location, (3) with victims who sought medical care at a hospital, but (4) who were not victims of domestic violence." *Shaughnessy* at ¶ 10. The Court found this required the city to engage in multiple search, evaluation and culling steps rather than clearly identifying the specific reports sought. *Id.* at ¶ 4, 11, 18, 20, and 22. This bears no resemblance to Ludlow's straightforward request for all database fields within a defined time period.

{¶12} ODH has provided Ludlow with various datasets from the EDRS in the past. (Complaint at 13-20; Response at 2-4, 7-8.) ODH's previous disclosure of EDRS

content does not estop the office from asserting any applicable public records exception going forward. *State ex rel. Dispatch Printing Co. v. Johnson,* 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 38. However, it does establish that existing ODH software can export the requested records using existing programming.

{¶13} Public records law requires production of existing records that are already compiled in export-capable databases.

> The Public Records Law, R.C. 149.43, does not exempt compilations of information contained in public records and does not require members of the public to exhaust their energy and ingenuity to gather information which is already compiled and organized in a document created by public officials.

*State ex rel. Post*, 38 Ohio St.3d 170, 527 N.E.2d 1230 (1988).

> Similarly, a public agency should not be permitted to require the public to exhaust massive amounts of time and resources in order to replicate the value added to the public records through the creation and storage on tape of a data base containing such records.

*State ex rel. Margolius v. Cleveland*, 62 Ohio St.3d 456, 460, 584 N.E.2d 665 (1992). With respect to whether requested records "exist" in a computer system:

> We hold that the clerk could not be required to create a new "document" by compiling material to facilitate review of the public records. Conversely, if the clerk's computer were already programmed to produce the desired printout, the "document" would already exist for the purpose of an R.C. 149.43 request.

*State ex rel. Scanlon v. Deters*, 45 Ohio St.3d 376, 379, 544 N.E.2d 680 (1989). *Accord State ex rel. Kerner v. State Teachers Retirement Bd.*, 82 Ohio St.3d 273, 274-275, 695 N.E.2d 256 (1998) ("In order to create the requested records, the board would have had to reprogram its computer system.")

{¶14} Together, the evidence of EDRS menu options, ODH descriptions of EDRS and EnterpriseDatawarehouseSecure output functions, the Death Data File Layout, multiple databases accessing all EDRS data, multi-format export capability, and examples of previous death data output are clear and convincing evidence that ODH

database systems have produced such output for requesters in the past and remain capable of producing Ludlow's requested output. The special master finds that production of records in response to Ludlow's request does not require ODH to reprogram its computer system or otherwise perform a search or research.

**This Request for Duplication of a Database is not Overly Broad**

{¶15} ODH did not deny Ludlow's request for a time period of the entire EDRS as overly broad in its correspondence (Complaint at 3-12), asserting only during litigation that "Mr. Ludlow's request for the entire computer file of death data is an overbroad public records request."[4] (Response at 5.). A public official may not oppose a request as overbroad for the first time in litigation, as this would enable the official to avoid his duty to provide the requester with an opportunity to revise the request by informing him of the manner in which records are maintained and accessed by the public office. *State ex rel. Summers v. Fox*, Slip Opinion No. 2020-Ohio-5585, ¶ 73-74. Accordingly, the special master finds that ODH has waived the defense of overbreadth.

{¶16} Even were the defense properly raised, a public official may not rely on the bare assertion of overbreadth without offering any support. *Id.* at ¶ 84. ODH provides little argument and no evidence that Ludlow's request is overly broad. ODH immediately recognized the EDRS as the repository of the requested records and provided Ludlow with an EDRS data dictionary to further inform his request. (Complaint at 13.) Ludlow's selection of all EDRS data fields for an eleven-month date range is clearly defined, discrete in scope, and thus proper under the Public Records Act. *See State ex rel. Data Trace Info. Servs., L.L.C. v. Cuyahoga County Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 9, 64-66; *State ex rel. Gambill v. Opperman*, 135 Ohio St.3d 298, 2013-Ohio-761, 986 N.E.2d 931, ¶ 10, 17-20; *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 7-8;

---

[4] To be clear, Ludlow's request does not seek the entire EDRS database but only data from March 1, 2020, to Jan. 26, 2021.

*State ex rel. Margolius v. Cleveland*, 62 Ohio St.3d 456, 459, 584 N.E.2d 665 (1992); *Speros v. Secy. of State*, Ct. of Cl. No. 2017-00389PQ, 2017-Ohio-8453, ¶ 8. The special master finds that Ludlow's request "reasonably identif[ied] what public records are being requested" and is not overly broad. R.C. 149.43(B)(2).

**Burden of Proof in Asserting Public Records Exceptions**

{¶17} The burden to establish a claimed exception rests on the public office. *State ex rel. Welsh-Huggins v. Jefferson Cty. Prosecutor's Office,* Slip Opinion No. 2020-Ohio-5371, ¶ 35. Exceptions to disclosure are strictly construed against the public-records custodian. *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 7. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception. *State ex ref. Cincinnati Enquirer v. Jones-Kelley,* 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus. Any doubt should be resolved in favor of disclosure of public records. *State ex rel. James v. Ohio State Univ.*, 70 Ohio St.3d 168, 169, 637 N.E.2d 911 (1994).

**R.C. 3701.17 Does Not Apply to Death Certificate Data Made Expressly Public by R.C. 3705.23(A)[5]**

{¶18} In R.C. Chapter 3701, applicable to ODH generally, R.C. 3701.17 provides in pertinent part:

(A) As used in this section:

    \* \* \*

(2) "Protected health information" means information, in any form, including oral, written, electronic, visual, pictorial, or physical that describes an individual's past, present, or future physical or mental health status or condition, receipt of treatment or care, or purchase of health products, if either of the following applies:

---

[5] For an expanded version of this section, *see Miller v. Ohio Dept. of Health*, Ct. of Cl. No. 2020-00618PQ, 2021-Ohio-996 at ¶ 24-30.

(a) The information reveals the identity of the individual who is the subject of the information.

(b) The information could be used to reveal the identity of the individual who is the subject of the information, either by using the information alone or with other information that is available to predictable recipients of the information.

(B) Protected health information reported to or obtained by the director of health, the department of health, or a board of health of a city or general health district is confidential and shall not be released without the written consent of the individual who is the subject of the information * * *

ODH claims that R.C. R.C. 3701.17 prohibits release of protected health information from death certificate data. However, even assuming *arguendo* that the cause of death reported in a death certificate is information describing an identified individual's past physical status or condition, ODH cites no case law or even ODH policy applying R.C. 3701.17 to death certificates or their contents. What little case law exists for R.C. 3701.17 involves its application to health agency records of living individuals, e.g., *Bd. of Health v. Lipson O'Shea Legal Group*, 2013-Ohio-5736, 6 N.E.3d 631 (8th Dist.), affirmed by *Cuyahoga Cty. Bd. of Health v. Lipson O'Shea Legal Group*, 145 Ohio St.3d 446, 2016-Ohio-556, 50 N.E.3d 499. Indeed, if R.C. 3701.17 did apply squarely to death certificate contents then ODH and local registrars have been violating the statute each time they release a certified death certificate pursuant to R.C. 3705.23(A). Consistent with this history of non-application, there is no evidence that ODH or local registrars have been redacting cause of death when they produce certified death certificates, or that they have ever been sued for failure to do so.

{¶19} Further, ODH's emergent claim that any content of statutorily public death certificates is subject to a general personal health information statute is barred by the "well-settled principle of statutory construction that 'when two statutes, one general and the other special, cover the same subject matter, the special provision is to be construed as an exception to the general statute which might otherwise apply.'" *State ex*

*rel. Slagle v. Rogers*, 103 Ohio St.3d 89, 2004-Ohio-4354, 814 N.E.2d 55, ¶ 14, quoting *State ex rel. Dublin Securities, Inc. v. Ohio Div. of Securities*, 68 Ohio St.3d 426, 429, 627 N.E.2d 993. *See also* R.C. 1.51. The General Assembly has preempted application of exceptions that might otherwise apply to death certificate data by mandating the public disclosure of death certificates. R.C. 3705.23. Death certificates are prepared on a prescribed form, R.C. 3705.16(C), O.A.C. 3701-5-02(A)(2) *Certificate of death* (Appendix B); O.A.C. 3701-5-02(B)(1) to (3). One required item is "28. Part I. Enter the disease, injuries, or complications that caused the death." Copies of death certificates can be obtained from both ODH and local registrars, and are utilized by probate courts, cemeteries, funeral directors, and commercial lenders,[6] in addition to their unconditional release to any person who requests a certified copy. Every decedent's cause of death is a personally identified datum contained in a document that is statutorily required to be disclosed to the public. A decedent's cause of death is thus public information.

{¶20} The statute mandating release of death certificates places no restriction on further dissemination of their contents. Rather, the General Assembly anticipates dissemination and use of death certificate content by accrediting a certified copy as "prima facie evidence of the facts stated in it in all courts and places." R.C. 3705.23(A)(3). *See Perez v. Cleveland*, 66 Ohio St.3d 397, 399, 613 N.E.2d 199 (1993) (referencing cause of death "as declared in the death certificate, which is indisputably a public record"). Records thus established as public cannot be made confidential merely by placing them in a different location. *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 378, 662 N.E.2d 334 (1996) (9-1-1 call recordings are public when made and are not susceptible to general exceptions when later aggregated by law enforcement investigators, prosecutors, or grand juries.) "Once clothed with the public records cloak, the records cannot be defrocked of their status." *Id. Accord State ex rel. Dispatch Printing Co. v. Morrow Cty. Prosecutor's Office*, 105 Ohio St.3d 172, 2005-

---

[6] *See* R.C. 2105.35, R.C. 3705.17, and R.C. 1321.66.

Ohio-685, 824 N.E.2d 64, ¶ 9-14; *State ex rel. Dillery v. Icsman*, 92 Ohio St.3d 312, 316, 750 N.E.2d 156 (2001). *See also* 1996 Ohio Op. Atty. Gen. No. 034 (where county recorder receives and publicly records instruments in accordance with statutory directives, social security numbers included in the records are not subject to the general exemption that would otherwise apply). The requirement that death certificates be recorded, printed out on demand, and serve as evidence of their contents "in all courts and places" establishes an expectation that the cause of death associated with every decedent "will be recorded and disclosed to the public." *See Enquirer v. Hamilton Cty.* at 378. The requested death data is thus expressly and indisputably "public."

{¶21} ODH cites a contrary conclusion in *Patrick Walsh v. Ohio Department of Health et al.*, Franklin C.P. No. 20 CV 006561, *8 (February 26, 2021), appeal pending in 10th Dist. Franklin No. 21 AP 109. (Response at 5-7.) However, the decision in *Walsh* did not involve all the arguments and evidence addressed in this action. On April 9, 2021, consistent with this court's decision in a previous case, the special master denied ODH's motion to stay pending the appellate outcome in *Walsh. See WCPO-TV v. Ohio Dept. of Health*, Ct. of Cl. No. 2020-00513PQ, 2021-Ohio-1566, ¶ 17-19. ODH's citation to *McGlone v. Centrus Energy Corp.*, S.D.Ohio No. 2:19-cv-2196, 2020 U.S. Dist. LEXIS 138449, at *4-5 (Aug. 4, 2020) (Response at 7) is inapposite because that case did not involve a statute affirmatively making the requested data public, like R.C. 3705.23(A).

{¶22} Despite the public nature of certified printed death certificates, the General Assembly could have enacted an exemption shielding the electronic death data compilations from the public. For example, records of criminal arrests and convictions are statutorily public in the hands of law enforcement agencies and courts, but are subject to an exception from public records disclosure where gathered and maintained in the Ohio Bureau of Criminal Identification and Investigation database. R.C. 109.57(D)(1)(a). The General Assembly crafted a similar exception for "medical records,

law enforcement investigative records, coroner investigative records, laboratory reports, and other records concerning a decedent" aggregated by ODH in the Violent Death Reporting System, even though some of these could be public at their source. However, there is no statutory provision to treat electronically compiled death certificate data any differently from the same data when printed out as a certificate from the same database.

{¶23} Under the facts and circumstances of this case, the special master concludes that ODH has not met its burden to prove that the withheld death data falls squarely within the exception contained in R.C. 3701.17.

**Conclusion**

{¶24} The special master recommends the court order respondent to provide requester with the requested records. It is further recommended the court order that requester is entitled to recover from respondent the amount of the filing fee of twenty-five dollars and any other costs associated with the action that he has incurred. It is recommended costs be assessed to respondent.

{¶25} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

JEFF CLARK
Special Master

**Filed June 8, 2021**
**Sent to S.C. Reporter 8/2/21**