[Cite as *Wengerd v. E. Wayne Fire Dist.*, 2017-Ohio-8951.]

| | |
|---|---|
| DAVID L. WENGERD | Case No. 2017-00426-PQ |
| Requester | Special Master Jeffery W. Clark |
| v. | REPORT AND RECOMMENDATION |
| EAST WAYNE FIRE DISTRICT | |
| Respondent | |

{¶1} In a letter dated December 19, 2016, requester David Wengerd made a public records request of respondent East Wayne Fire District ("East Wayne FD") including, as relevant to this action:

> "Any and all attorney fees paid in 2015 and 2016 and for what purpose and to whom.
>
> * * *
>
> Any and all grants that have been applied for and or received since 2014. This would include any and all paperwork either digital or hardcopy including the applications."

(Complaint, p. 3.) East Wayne FD responded on December 30, 2016 by requesting clarification of the request for attorney fees documents, requesting clarification of the request for grant records, and advising that East Wayne FD does not maintain copies of Federal Emergency Management Agency (FEMA) grant applications. (Complaint, p. 4-6.) On January 9, 2017, Wengerd submitted the following clarification:

> 1. All invoices received and checks that have been written to Atty. Comstock, * * * in 2015 and 2016.
>
> * * *
>
> 3. I am looking for the applications, notifications, and terms of the following FEMA Grants.
>    A. 2014 SAFER Grant for hiring for $648,000.00.
>    B. 2015 SAFER Grant for recruitment for $639,950.00.

       C. 2015 AFG Grant for Paid On Call/Stipend for personal protection for $284,457.00.

       * * *

       5. The number of Fire and EMS runs for the Village of Dalton for 2016.
       6. The number of runs for Fire and EMS for the unincorporated parts of Sugar Creek Township for 2016."

(Complaint, p. 7.) On January 22, 2017, East Wayne FD responded to request # 3 by stating: "Federal grants are applied for and processed through a federal government portal & applicants are required to use this portal unless exempted by federal law. EWFD is not exempted." It stated in response to requests # 5 and 6,

> "we do not have any document that divides the information the very specific way you requested. Monthly runs are recorded in our monthly meeting minutes that are posted (after approval) on our website at www.eastwaynefd.com. They are also announced during monthly meetings when the fire chief gives his report."

(Complaint, p. 22.) On February 9, 2017, East Wayne FD provided copies of check stubs and redacted billing statements of attorney David Comstock. (Complaint, p. 8-21.) On February 25, 2017, Wengerd repeated his request for the federal grant applications, and asked: "Please cite the ORC Rule or OAG Opinion that states that EWFD does not have to provide this information." He repeated his request for "a call log or listing of all FIRE and EMS runs for Sugar Creek Township and the Village of Dalton for the entire year of 2016." (Complaint, p. 23.) On March 21, 2017, East Wayne FD sent Wengerd the following explanation for its denial of copies of the applications for federal grants:

> "[T]he Fire District has interpreted your request to mean applications for SAFER and AFG programs administered by the Federal Emergency Management Agency/Department of Homeland Security.

> The District does not have any such record.

> The Fire District does not have an obligation to produce records that are not under its control. See *State ex rel. Doe v. Tetrault*, Clairmont [sic] App. No. CA2011-10-070, 2012 WL 3641634, 2012-Ohio-3879.
>
> The process for submitting a FEMA grant requires an online application filed through FEMA's website which is governed and controlled by FEMA. The grant application is completely electronic and the District has not maintained any electronic or paper copies of the grant applications."

(Complaint, p. 24.) On March 21, 2017, East Wayne FD reiterated its denial of the request for a call log or listing of specified fire and EMS runs as not existing in a single document. (Complaint, p. 26.)

{¶2} On May 9, 2017, Wengerd filed a complaint under R.C. 2743.75 alleging denial of access to public records by East Wayne FD in violation of R.C. 149.43(B). The complaint seeks relief regarding the following items: 1) applications for the three specified SAFER grants, 2) call logs for fire and EMS runs for Sugar Creek Township and the Village of Dalton, and 3) unredacted invoices from attorney David Comstock. The matter was referred for mediation, and the court was notified that the parties had not resolved all disputed issues. On July 27, 2017, East Wayne FD filed a response and motion to dismiss. On September 7, 2017, East Wayne FD filed unredacted copies of all withheld records responsive to the requests, under seal, with additional briefing. On September 27, 2017, requester filed a reply to respondent's pleadings.

{¶3} R.C. 149.43(B)(1) requires public offices to make their public records available for inspection, or make copies available, upon request by any person. The policy underlying the Public Records Act is that "open government serves the public interest and our democratic system." *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20. "[O]ne of the salutary purposes of the Public Records Law is to ensure accountability of government to those being governed." *State ex rel. Strothers v. Wertheim*, 80 Ohio St.3d 155, 158, 684 N.E.2d 1239, 1242 (1997). Therefore, R.C. 149.43 must be construed "liberally in favor of broad access, and any

doubt is resolved in favor of disclosure of public records." *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996).

{¶4} R.C. 2743.75(F)(1) states that public records claims filed thereunder are to be determined through "the ordinary application of statutory law and case law." Case law regarding the alternative statutory remedy of a mandamus action[1] provides that a relator must establish by "clear and convincing evidence" that he is entitled to relief. *State ex rel. Miller v. Ohio State Hwy. Patrol,* 136 Ohio St.3d 350, 2013-Ohio-3720, ¶ 14. Therefore, the merits of this claim shall be determined under the standard of clear and convincing evidence, i.e., "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. *See Hurt v. Liberty Twp.*, 5th Dist. Delaware No. 17CAI050031, 2017-Ohio-7820, ¶ 27-30.

{¶5} There is no dispute that East Wayne FD is a public office. East Wayne FD does dispute that its FEMA SAFER grant applications are "records" of its official functions, or are physically "kept" by it, arguing that they are therefore not subject to disclosure under the Public Records Act as "public records." *See* R.C. 149.43(A)(1) ("'Public record' means *records kept by* any public office, * * *.")

**Motion to Dismiss**

{¶6} East Wayne FD moves to dismiss the complaint on the grounds that, 1) the request for fire and EMS runs has been rendered moot by provision of those records subsequent to the filing of the complaint, 2) the request for legal invoices for David Comstock has been rendered moot by provision of those records subsequent to the filing of the complaint, 3) the legal invoices of David Comstock were properly

---

[1] Formerly R.C. 149.43(C)(1), recodified in 2016 as R.C. 149.43(C)(1)(b), 2016 Sub.S.B. No. 321.

redacted to withhold attorney-client privileged information, and 4) with respect to the applications for FEMA grants, a) no copies are kept by East Wayne FD, b) the final application is the property and record of the Department of Homeland Security, c) the "grant narrative" portions of the grant applications constitute trade secrets of East Wayne FD and the independent consultant who composed the narratives, and d) the "grant narrative" portions of the grant applications are copyrighted as the literary work of the grant writer and the District.

{¶7} In construing a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). Then, before the court may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975). The unsupported conclusions of a complaint are, however, not admitted and are insufficient to withstand a motion to dismiss. *Mitchell* at 193.

### Suggestion of Mootness

{¶8} In an action to enforce R.C. 149.43(B), a public office may produce the requested records prior to the court's decision, and thereby render the claim for production of records moot. *State ex rel. Striker v. Smith*, 129 Ohio St.3d 168, 2011-Ohio-2878, ¶ 18-22. A court considering a claim of mootness must first determine what records were requested, and then whether all responsive records were provided. Wenger requested specific call logs of fire and EMS runs, but affirms that subsequent to the filing of the complaint East Wayne FD provided these records. "I am satisfied with the production of these records for the Fire and EMS runs." (August 15, 2017 Response to Order.) I therefore recommend that the motion to dismiss the claim for production of fire and EMS run records as moot be GRANTED.

{¶9} With respect to the request for billing invoices of attorney David Comstock, East Wayne FD provided Wengerd with redacted invoices.  Wengerd disputes that the Comstock invoices were properly redacted to remove only attorney-client and/or trial preparation information.  I therefore recommend that the motion to dismiss this claim as moot be GRANTED only as to the unredacted portions of the provided invoices of David Comstock, and DENIED as to the redacted portions.

**Application of Claimed Exceptions**

{¶10} R.C. 149.43(A)(1) enumerates specific exceptions from the definition of "public record," as well as a catch-all exception for, "[r]ecords the release of which is prohibited by state or federal law."  R.C. 149.43(A)(1)(v).  If a court determines that records withheld from release are exempt from disclosure, a complaint based solely on denial of access to the records is subject to dismissal for failure to state a claim upon which relief may be granted. *State ex rel. Welden v. Ohio State Med. Bd.*, 10th Dist. Franklin          No. 11AP-139, 2011-Ohio-6560, ¶¶ 2, 13-15; *State ex rel. Parisi v. Heck*, 2d Dist. Montgomery No. 25709, 2013-Ohio-4948, ¶¶ 2-3, 5-13.  The public office bears the burden of proof to establish the applicability of any exception.

> "Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. * * * A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception."

*State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 10.  East Wayne FD asserts that the withheld records are subject to attorney-client, trial preparation, trade secret, and copyright laws, and thus constitute "[r]ecords the release of which is prohibited by state or federal law."[2]

---

[2] Although East Wayne FD did not cite all of these exceptions in its responses to Wengerd's requests, it is permitted to raise them in defense of this litigation.  "The explanation [provided when denying a request] shall not preclude the public office * * * from relying upon additional reasons or legal authority in defending an action commenced under division (C) of this section." R.C. 149.43(B)(3).

### Attorney-client Privilege

**{¶11}** East Wayne FD asserts that the billing event narrative descriptions redacted within the invoices of attorney David Comstock are protected from disclosure by the common-law attorney-client privilege, defined in Ohio as follows:

> "Under the attorney-client privilege, '(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.'"

(Citations omitted.)  *State ex rel. Leslie v. Ohio Housing Fin. Agency,* 105 Ohio St.3d 261, 2005-Ohio-1508*,* ¶ 21.   The party asserting attorney-client privilege bears the burden of showing the applicability of the privilege.  *State ex rel. Pietrangelo v. Avon Lake*, 146 Ohio St.3d 292, 2016-Ohio-2974, ¶ 9.

**{¶12}** In *Pietrangelo*, the Supreme Court held that attorney-client privilege applies to specific portions of attorney billing documents:

> "This court has held that the narrative portions of itemized attorney-fee billing statements containing descriptions of legal services performed by counsel are protected by the attorney client privilege.  Other information on the billing statements—e.g., the general title of the matter being handled, the dates the services were performed, and the hours, rate, and money charged for the services—is considered nonexempt and must be disclosed."

(Citations omitted.) *Id.* at ¶ 10.  The billing invoices provided to Wengerd subsequent to the filing of the complaint disclose the billing entity, invoice and file numbers, billing period, dates services were rendered, allocated time and cost per billing entry, total cost per billing period, as well as some of the narrative descriptions.  (Response, Exhibit B.) East Wayne FD provided an "Explanation of Legal Expenses 2016" (Response, Exhibit C) to assist in evaluation of the application of privilege to the redacted material. On review of the unredacted billing invoices filed under seal, I find that all of the

redacted billing narratives satisfy the application of common law attorney-client privilege.

{¶13} There is no evidence that East Wayne FD has waived the privilege as to these invoices. I conclude that East Wayne FD properly applied the common-law attorney-client privilege in withholding the redacted narrative descriptions of legal services, and recommend that the motion to dismiss this claim be GRANTED. It is thus unnecessary to address the claimed exception of these records as trial preparation. R.C. 149.43(A)(1)(g), (A)(4).

**The Grant Applications Are Records of East Wayne FD**

{¶14} East Wayne FD asserts that its FEMA grant applications are "the property and record" of the federal Department of Homeland Security ("DHS"), and not the records of East Wayne FD. (Response, pp. 3, 7.) However, a document may serve as a record in more than one public office. *State v. Sanchez*, 79 Ohio App.3d 133, 136, 606 N.E.2d 1058 (6th Dist.1992). Regardless of whether they also function as records of a federal agency, the only question for this court is whether these items serve as records of the official functions of East Wayne FD.

{¶15} R.C. 149.011(G) provides a three-part definition of "records," as used in Revised Code Chapter 149:

> "'Records' includes any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."

Based on respondent's description of the creation, transmission, storage, and retrievability of the grant applications, these documents are "electronic records." (Response, p. 3; Everhart Aff., ¶ 12 and attached contracts for services; FEMA applications: Applicant Information Section (SAM.gov certifications), and Submit Application Section.) "'Electronic record' means a record created, generated, sent,

communicated, received, or stored by electronic means." R.C. 1306.01(G). As used in Chapter 1306, "'[r]ecord' means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form." R.C. 1306.01(M). The grant applications therefore meet the first element of the definition of records, as a "document, device, or item."

{¶16} Regarding the second element, the applications were *created* by East Wayne FD through meetings and other collaboration with Gatchell Grant Resources, LLC ("Gatchell"). (Response, p. 2; Everhart Aff., ¶¶ 8-10, 17, 19 and attached contracts for services, Section I.). Each application was also *received* by East Wayne FD from Gatchell for approval prior to submission. (Response, p. 2-3; Contracts for services, Section I ("Grant shall not be submitted unless approval has been given by the Fire Chief or designee").). The application documents also *come under the jurisdiction of* East Wayne FD as both the entity seeking the grant funding, the entity "ultimately responsible for the accuracy of all application information submitted," and the entity that signed every attestation and certification in the grant application. (FEMA applications: Applicant's Acknowledgements and all signature fields.) *See State ex rel. Cincinnati Enquirer v. Krings*, 93 Ohio St.3d 654, 660, 758 N.E.2d 1135 (2001) (requested cost-overrun records were "within the jurisdiction of" the public office that appointed the contractor, regardless of who had possession.").

{¶17} The third element of the definition, "serves to document" the activities of the office, is broad and inclusive:

> "We previously have held that the General Assembly's use of 'includes' in *R.C. 149.011(G)* as a preface to the definition of 'records' is an indication of expansion rather than constriction, restriction, or limitation and that the statute's use of the phrase 'any document' is one encompassing all documents that fit within the statute's definition, regardless of 'form or characteristic.' * * * There can be no dispute that there is great breadth in the definition of 'records' for the purposes here. Unless otherwise exempted or excepted, almost all documents memorializing the activities of a public office can satisfy the definition of 'record.' * * * Indeed, any

> record that a government actor uses to document the organization, policies, functions, decisions, procedures, operations, or other activities of a public office can be classified reasonably as a record."

(Citations omitted.) *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 20.  Records related to the funding of a public office serve to document the "functions, policies, decisions, procedures, operations, or other activities of the office." *See State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, ¶¶ 1, 20-21.  Each of the FEMA grant applications document East Wayne FD's act of seeking funding for its official functions, and contain representations (using FEMA grant application EMW-2015-FF-00395 as an example) of East Wayne FD's history, infrastructure protected, staffing and deployment capabilities, fire-related injury and fatality statistics, budget/billing details, vehicles, call volume, rescue and emergency medical service incidents, mutual aid, "ideal" number of volunteer firefighters and coordinator, office equipment and insurance costs, incentive award proposal, hiring exam and training expenses, description of allegedly unmet needs, and the projected impact of additional recruitment and retention on district budget, operations and safety. This sworn representation of the capabilities and needs of the East Wayne FD was made formally to the federal government.  Such federal grant applications have been used to challenge the validity of agency assertions.  *United States v. Catholic Healthcare W.*, 445 F.3d 1147, 1149, 2006 U.S. App. LEXIS 9732 (9th Cir. Ariz., 2006); *United States ex rel. Heath v. Indianapolis Fire Dep't.*, 2017 U.S. Dist. LEXIS 61499 (SD Indiana, April 24, 2017) (false claims action regarding fire department FEMA grant application.)  The FEMA grant applications clearly document East Wayne FD's "functions, policies, decisions, procedures, operations, and other activities" within the broad meaning of the statute.

{¶18} I conclude that the grant applications specified in Wengerd's request meet the definition of "records" of East Wayne FD.

**The Grant Applications are "Kept By" East Wayne FD**

{¶19} The duties of a public office under R.C. 149.43(B) apply to its *public* records. "'Public record' means records *kept by* any public office." R.C. 149.43(A)(1). "Kept by" means records maintained by the public office as provided by law or under the rules adopted by the relevant records commission (i.e., approved records retention schedules). Once created, received, or coming under the jurisdiction of a public office,

> "All records are the property of the public office concerned and shall not be removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of, in whole or in part, except as provided by law or under the rules adopted by the records commissions provided for under sections 149.38 to 149.42 of the Revised Code * * *"

R.C. 149.351(A); *see also* R.C. 149.40, *Making only necessary records*. Remedies for unlawful removal or transfer of a public office's records include a civil action for injunctive relief and/or forfeiture pursuant to R.C. 149.351(B), and replevin by the attorney general if requested by the department of administrative services. R.C. 149.352; Revised Code Chapter 2737.[3] East Wayne FD does not allege proper disposal of the grant applications under a specific law, or as provided by its records retention schedules for grant files. I conclude that East Wayne FD remains obligated by R.C. 149.43(B)(1) to maintain these records, and to take any necessary steps to restore the records and make them available for inspection or copying under the Public Records Act. *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Comm'rs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, ¶ 19-41.

{¶20} As noted previously, "electronic records" includes records stored in an electronic medium and "retrievable in perceivable form." R.C. 1306.01(G), (M). The FEMA grant applications were submitted to DHS using a valid and active Data Universal Numbering System (DUNS) number assigned to East Wayne FD, through the System for Award Management (SAM.gov) web site. The grant records stored there are

---

[3] These enforcement actions are not within the jurisdiction of this court.

thereby directly accessible to both East Wayne FD and Gatchell. (FEMA applications, Applicant's Acknowledgements Section and Applicant Information Section; Everhart Aff., ¶ 12.) On September 7, 2017, East Wayne FD used this access to physically produce its grant applications to the court, stating that it had relied upon DHS for maintenance of the records:

> "[t]he Fire District did not maintain copies of these applications in any of its files, but relied upon the grant applications being maintained by the Department of Homeland Security. The Affiant obtained the grant applications in their entirety from the Department of Homeland Security."

(Fire Chief Nussbaum Aff., ¶ 2-3.) East Wayne FD has thus either maintained the records in accordance with records retention law using remote access, or has restored the records to its local grant files in compliance with *Seneca Cty.*, *Id.* I conclude that the requested grant applications are "kept by" East Wayne FD.

{¶21} Even had East Wayne FD lacked direct access to the grant applications, the district had access to the records through Gatchell, and would have been obligated to utilize that indirect access. Respondent contracted with Gatchell for a public purpose, making Gatchell a "person responsible for public records," R.C. 149.43(B)(1), (C)(1), in a relationship of "quasi-agency." *State ex rel. ACLU v. Cuyahoga Cty. Bd. of Comm'rs.* 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 52-54. Gatchell agreed to submit the grant applications "on behalf of the Fire District." *Id.*; (*see* Contracts for Services, Section I, Grant Advisors.). Gatchell maintained copies of the grant applications in its files, and had access to the submitted applications through the DHS web site. (Everhart Aff., ¶ 12.) Under such circumstances,

> "where (1) a private entity prepares records in order to carry out a public office's responsibilities, (2) the public office is able to monitor the private entity's performance, and (3) the public office has access to the records for this purpose, a relator in an R.C. 149.43(C) mandamus action is entitled to relief regardless of whether he also shows that the private entity is acting as the public office's agent."

*State ex rel. Mazzaro v. Ferguson,* 49 Ohio St.3d 37, 39, 550 N.E.2d 464 (1990)*; accord Toledo Blade v. Univ. of Toledo Found.*, 65 Ohio St.3d 258, 263, 602 N.E.2d 1159 (1992).   In this case, (1) Gatchell was contracted to prepare the applications in order to carry out East Wayne FD's responsibilities, (2) East Wayne FD was able (indeed, required by FEMA) to monitor and approve Gatchell's performance, and (3) East Wayne FD had access to the application records through Gatchell.  Where a request is made to a public office for office records maintained only by a contractor, the records should be retrieved and provided by the office so that the requester does not have to deal with a private party in order to get them.  *State ex rel. Cincinnati Enquirer v. Krings*, 93 Ohio St.3d 654, 659, 758 N.E.2d 1135 (2001).

{¶22} A fundamental precept of the quasi-agency responsibility of a person responsible for public records is that "governmental entities cannot conceal information concerning public duties by delegating these duties to a private entity."  *Id*.  The public has a "right of access to public records, regardless of where they are physically located, or in     whose possession they may be."  *Mazzaro*, 49 Ohio St.3d 37, 40, 550 N.E.2d 464 (1990).  East Wayne FD was therefore under a duty to provide copies of its grant applications to Wengerd regardless of where they were located.

**Ohio Uniform Trade Secrets Act (R.C. 1333.61 to 1333.69)**

{¶23} Ohio trade secret law may exempt covered records from disclosure under the Public Records Act. *State ex rel. Gambill v. Opperman*, 135 Ohio St.3d 298, 2013-Ohio-761, 986 N.E.2d 931, ¶ 22. However, "[c]onsistent with [the policy of promoting open government], exceptions to disclosure must be strictly construed against the public records custodian, and the custodian bears the burden to establish the applicability of an exception."  *State ex rel. Besser v. Ohio State University*, 89 Ohio St.3d 396, 398-400, 732 N.E.2d 373 (2000) (trade secret).  Upon *in camera* review of the unredacted forms, I find that the text in the "application narrative" fields identified by respondent fails to meet the statutory standard for "trade secret."

R.C. 1333.61(D) provides that:

"(D) 'Trade secret' means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

The following factors are to be used in analyzing a trade secret claim:

"(1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information."

*Besser, supra at* 399-400. In *Besser*, the Court found that a public office's business plan, staffing contract, profit/loss analysis, acquisition goal summaries, working assumptions for operations, notes and research on comparable hospitals, draft asset purchase agreement, and pro forma for acquisition of a hospital were not proven to be trade secrets. *Id.*, at 399-406.

{¶24} Respondent initially asserted that the grant application forms in their entirety constituted trade secret held by both East Wayne FD, and Gatchell. (Response, p. 2-7.) However, respondent has subsequently limited assertion of both trade secret and copyright protection to the text within specific narrative fields of the forms:

"Neither the Fire District nor the grant writer seek to exclude from disclosure the information which constitutes a recitation of facts or characteristics regarding the District. * * * The only information for which

the District seeks protection under either trademark [sic] or copyright law are the application narratives."[4]

(Notice of filing, p. 1-2.) Respondent describes the listed application narratives only as compilation of departmental information "which outlines the specific project." (Everhart Aff. ¶ 8-10.)

{¶25} Regarding the first statutory element of trade secret, respondent "bears the burden to identify and demonstrate that the material is included in categories of protected information under the [Trade Secrets Act]." *Besser* at 400. The categories are listed in R.C. 1333.61(D), and include:

> "scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, * * *."

Of these categories, respondent mentions only "method" in its pleadings. Respondent argues that "the methodology utilized by the grant writers would not be known within the department, with the exception of the fire chief, and this information is shared with no one else." (Response, p. 3; Everhart Aff. ¶ 17.) However, this "methodology" is never described, and no special method is apparent to a reader of the narrative fields, other than the standard practices of technical writing. Respondent does not assert that it or Gatchell maintains a written methodology guide. The only recipe for grant application success that Gatchell asserts is the observation that "[g]rants are awarded based upon the information contained within and the clarity of the narrative." (Everhart Aff. ¶ 11.) Respondent has not met its burden to show that Gatchell's narratives constitute or reveal a distinct "method" for securing federal grants.

{¶26} The remaining statutory and *Besser* factors are likewise unsupported by factual evidence, with the exception of Gatchell's efforts to control disclosure of

---

[4] The court assumes respondent intended "trade secret" rather than "trademark" in this statement of limitation, as trademark is both inapplicable and not addressed elsewhere. The court's bases for rejecting trade secret application are in any case dispositive of the application forms in their entirety.

completed forms.   Respondent does not provide any evidence of the independent economic value of its or Gatchell's methodology.   Nor does it quantify the amount of savings effected and value to the holder in having the information as against competitors, or the amount of effort or money expended in obtaining and developing the information, or the amount of time and expense it would take for others to acquire and duplicate the information.   Respondent relies instead on Gatchell's vague assertion that the district and Gatchell "have invested significant periods of time and money * * * in developing the methodology of the presentation to the federal government" (Everhart Aff., ¶ 19.), and the equally vague claim that,

> "[i]t would require a significant amount of time and money for others to duplicate the successful services of Gatchell unless they were to obtain copies of the applications requested by Mr. Wengerd.  In that regard, other competing subdivisions would simply 'cut and paste' much of the narrative."

*Id.*, ¶ 20.   Gatchell states, again without supporting facts, that if the grant applications were disclosed, "the ability of the District to obtain grants would decrease as would Gatchell's business as its work product could be shared throughout Ohio."  *Id.*  For example, Gatchell does not show that its success rate in such applications is superior to that of other grant writers.   Further, other grant writers and fire departments have ready access to advice for compiling departmental information into clear and relevant narrative answers in FEMA grant application forms.  FEMA itself offers extensive online advice as to how its Peer Reviewers evaluate the narrative portions of grant applications.[5]  I find that the requirements, suggested contents, and evaluative standards for SAFER narrative fields is information that is readily available both outside and inside the grant application business, and that others can acquire and duplicate that information with minimal time and expense.   Neither East Wayne FD nor Gatchell show that they

---

[5] https://www.fema.gov/writing-good-narrative (expand Narrative Evaluation Criteria section) (accessed October 10, 2017); https://www.fema.gov/afg/docs/FEMA-goodnarrative.pdf (accessed October 10, 2017.); https://www.fema.gov/media-library-data/1485876473121-243174416d901145ba6f011d9c10d50a/FY16FPSSel fEvalFINAL.pdf (accessed October 10, 2017).

have created a method or formula beyond the generally known, publicly coached criteria for filling in narrative response fields in FEMA grant applications. *See Arthur Murray Dance Studios of Cleveland v. Witter*, 62 Ohio L. Abs. 17, 105 N.E.2d 685 (C.P.1952). Applying the standards in *Besser*, a review of the narrative fields *in camera* fails to convince the special master that competitor agencies or grant writers would accomplish any significant savings of time or expense by duplicating the specific compilations of facts, history, and goals in the East Wayne FD applications. Finally, while respondent and Gatchell have agreed to withhold the completed application forms from others, a confidentiality agreement standing alone cannot support a trade secret claim. *State ex rel. Plain Dealer v. Ohio Dep't of Ins.*, 80 Ohio St.3d 513, 527, 687 N.E.2d 661 (1997).

{¶27} I find that respondent fails to provide any factual evidence in support of its claim of trade secret, offering only conclusory affidavit statements. "[R]eliance on conclusory affidavit statements is insufficient to satisfy [proponent's] burden to identify and demonstrate that the records withheld and portions of records redacted are included in categories of protected information under R.C. 1333.61(D)." *Besser* at 400-404; *Arnos v. MedCorp, Inc.*, 6th Dist. Lucas No. L-09-1248, 2010-Ohio-1883, ¶ 17 (conclusory claims that proponent "had developed a process by which it was able to obtain success in securing Ohio sales/use tax refunds for clients" were insufficient). Respondent fails to show that the narrative answers in the FEMA application forms constitute trade secrets of either it or Gatchell.

{¶28} Finally, although the Uniform Trade Secrets Act provides that "[a]ctual or threatened misappropriation may be enjoined," R.C. 1333.62(A), Gatchell has made no effort to enjoin the threatened release of the subject grant applications as public records. Respondent cites no precedent finding trade secret protection for grant writing, citing only cases involving customer lists and reusable civil service exam questions. Nor is respondent's proposition particularly limited, arguing essentially that any narrative in a government funding application drafted with the assistance of a private consultant

may be claimed as "trade secret." The court has the duty to construe statutes to avoid such unreasonable or absurd results. *Toledo Blade Co. v. Seneca Cty. Bd. of Comm'rs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, ¶ 31; *State ex rel. Cincinnati Post v. City of Cincinnati*, 76 Ohio St.3d 540, 543, 668 N.E.2d 903 (1996).

{¶29} I conclude that respondent fails to show that any of the listed narrative field text falls squarely within the definition of trade secret.

**Federal Copyright Act**

{¶30} Respondent claims that the narrative field text is "original, artistic work" protected by the Federal Copyright Act. East Wayne FD states:

> "Both the District and grant writer seek protection against disclosure of the narrative sections of the applications as these sections represent the original, artistic work, through the collection and assembling of data in such a way that articulates the needs of the District, as well as its use of grant funds."

(Notice of filing, p. 4.) 17 U.S.C. §102 provides, in part:

> "(a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, * * *. Works of authorship include the following categories:
>
>     (1) Literary works; * * *"

"Literary works" are simply works expressed in words, numbers, or other symbols. 17 U.S.C. §101. Requester notes that neither Gatchell nor the East Wayne FD have registered the narrative text of the FEMA applications as copyrighted works. However, formal registration is not a condition of copyright protection. 17 U.S.C. § 408(a).

{¶31} The application sections that respondent claims contain copyright material are each an electronic field or answer box, headed by a question to be answered. The questions ask for identification of the department's problems/issues, the department's plan to address the identified problems, and how the personnel and material requested in the grant will benefit the department and others. The questions seek local information and goals relevant to the purposes of the grant. Neither the questions nor

the FEMA Narrative Evaluation Criteria (see links, *supra*) place any scoring value on "artistic" quality.

{¶32} Unlike trade secret, the terms of copyright law protect only the finished "work." "In no case does copyright for an original work of authoriship extend to any idea, procedure, process system, method of operation, concept, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. §102(b). I conclude that requester's and Gatchell's assertion of copyright protection, to the extent it is based on the illustration or embodiment of any "methodology," is prohibited by the express language of the Copyright Act.

{¶33} Respondent claims that each submitted application is "an original work of authorship." 17 U.S.C. §102(a). In copyright law, "[o]riginality requires independent creation and a modicum of creativity." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345-346, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). "It is axiomatic that, while 'no author may copyright his ideas or the facts he narrates,' an author may copyright the expression of those ideas." *John G. Danielson, Inc.* v. *Winchester-Conant Props., Inc.*, 322 F.3d 26, 42 (1st Cir. 2003) (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 556, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985)). In the *Feist* case, the U.S. Supreme Court held that even where the compilation and arrangement of facts possesses a minimal degree of creativity, copyright does not extend to the facts themselves but only to the original selection, coordination, or arrangement of the facts. *Feist Publ'ns, Inc., v. Rural Tel. Serv. Co., 499 U.S. 340, 359-360 (1991).* Here, Gatchell alleges only that it compiled and presented with clarity the largely factual information it obtained from East Wayne FD, and does not refer the court to any specific portion of any narrative field that reflects copyright-worthy "creativity." While the narrative answers are presumably original in the sense that they describe the East Wayne FD rather than any other fire department, they are simply not

a "creative literary work." The affidavit of Gatchell employee Diell Everhart is limited to this conclusory statement:

> "the original work set forth in the narrative is the literary work of the grant writer and the writer has sought protection of this information through the agreement with the District. Gatchell objects to the release of its work based upon the fact the release will cause irreparable harm to Gatchell and the District as its ability to compete for grants would be lessened."

(Everhart Aff. ¶ 21.) This statement repeats the standards of trade secret, not copyright. I find that any "creativity" involved in the narrative responses to questions in these applications is negligible. *Satava v. Lowry,* 323 F.3d 805, 810-812 (9th Cir., 2003) (mere rearrangement of commonplace elements). Assuming *arguendo* that Gatchell holds copyright in the narrative field text, it may seek damages after the fact against any person who infringes on its exclusivity rights. *See* 17 U.S.C. § 106-118; 17 U.S.C. § 501 et seq. A copyright owner may also seek an injunction to prevent or restrain infringement of a copyright, although there is no evidence that Gatchell has sought to do so. 17 U.S.C. § 502.

{¶34} However, even were the material here found to be copyrighted, the Copyright Act allows for "fair use" where the material is used for criticism, research, commentary, educational and/or noncommercial purposes. 17 U.S.C. 107.[6] "Exceptions to public records requests do not include the copyright defense where the public records fall under the 'fair-use' exception to the federal copyright statute * * *." *State ex rel. Rea v. Ohio Dept. of Education*, 81 Ohio St.3d 527, 532, 692 N.E.2d 596 (1998). The *Rea* Court found fair use in the public records context where the requesting

---

[6] "Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, * * *, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
(2) the nature of the copyrighted work;
(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
(4) the effect of the use upon the potential market for or value of the copyrighted work."

parties "have no intention of copying these materials for commercial resale purposes." *Id.*; *see also State ex rel. Perrea v. Cincinnati Pub. Sch.*, 123 Ohio St.3d 410, 2009-Ohio-4762, ¶ 35-45 (O'Connor, J., concurring) (public records request for portions of school exams should fall under "fair use" exception because requester did not intend to use them for commercial purposes); *compare Gambill*, 135 Ohio St.3d at ¶ 23 ("the fair-use exception to the federal copyright statute is inapplicable because Gambill wants the requested database for commercial purposes related to his appraisal business.") Wengerd states that he has no intention of using the narrative box text for commercial resale or competitive purposes (Response to Respondent's Claim of Copyright Protection, pp. 1, 5-6.), and East Wayne FD does not assert that Wengerd is a competitor to either it or Gatchell in seeking federal grants. I conclude that Wengerd seeks to examine the material as public record documenting official actions taken by the East Wayne FD, and not for any commercial purpose. Wengerd's request for copies therefore constitutes "fair use" under 17 U.S.C. §107. On this independently sufficient basis, the copyright defense would fail as an exception to release of the grant applications.

{¶35} Finally, copyright protection extends only to the creation of *copies* of a protected work. Even if the copyright defense were fully applicable, it would not allow respondent to deny a public records request from Wengerd to visually inspect the narrative fields. *See* R.C. 149.43(B)(1).

### Nondisclosure Agreement

{¶36} East Wayne FD argues that it is prohibited from disclosing the application forms because of a nondisclosure clause in its contracts with Gatchell. However, under Ohio law a public entity cannot enter into an enforceable promise of confidentiality with respect to public records. *State ex rel. Findlay Publ. Co. v. Hancock Cty. Bd. of Commrs.*, 80 Ohio St.3d 134, 137, 684 N.E.2d 1222 (1997); *State ex rel. Gannett Satellite Info. Network v. Shirey*, 78 Ohio St.3d 400, 403, 678 N.E.2d 557 (1997).

A contractual promise of confidentiality with respect to an otherwise public record is void *ab initio*. *Teodecki v. Litchfield Twp.*, 2015-Ohio-2309, 38 N.E.3d 355, ¶ 19-25 (9th Dist).

**Permitted Redactons**

{¶37} Wengerd expressly agrees to the redaction of social security numbers, birth dates, and personal income information contained in the applications. (Requester's response, p. 4-5.)  I find in addition that the SAM.gov access codes and any bank account or routing information contained in the application forms, to the extent they are used only for administrative convenience and reveal nothing about the applying agency's conduct, would be non-record information subject to redaction. *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 21-29.  The SAM.gov codes may also be subject to exception under R.C. 1306.23 if their disclosure would jeopardize respondent's secure use of the federal online service.  For purposes of this case, information described in this paragraph may be redacted from the application forms.

**Conclusion**

{¶38} Upon consideration of the pleadings and attachments, I find that East Wayne FD rendered the request for fire and EMS run sheets moot by providing those records subsequent to the filing of the complaint.  I further find that East Wayne FD properly redacted attorney-client privileged narratives from the itemized attorney billing statements it provided to Wengerd.  Accordingly, I recommend that the court issue an order DISMISSING the claims for production of these records.  Civ.R. 12(B)(6).

{¶39} I further find that Wengerd has established by clear and convincing evidence his entitlement to the requested records documenting East Wayne FD's applications for federal FEMA grants.  Respondent fails to meet its burden to prove that the allegedly exempt narrative text is subject to withholding as either trade secret or copyrighted literary work.  I recommend that East Wayne FD be ORDERED to provide

Wengerd with unredacted copies of the grant applications, other than the information detailed in the "Permitted Redactions" section above. Because respondent denied access to these records in violation of division (B) of R.C. 149.43, I recommend that Wengerd is entitled to recover from East Wayne FD the costs associated with this action, including the twenty-five dollar filing fee. R.C. 2743.75(F)(3)(b).

{¶40} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

JEFFERY W. CLARK
Special Master

cc:

Alfred E. Schrader
441 Wolf Ledges Parkway, Suite 400
P.O. Box 0079
Akron, Ohio 44309

David C. Comstock, Jr.
3701B Boardman-Canfield Road
Suite 101
Canfield, Ohio 44406

**Filed November 8, 2017**
**Sent to S.C. Reporter 12/11/17**