[Cite as *Standifer v. Ohio Dept. of Health*, 2023-Ohio-622.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| LAUREN (CID) STANDIFER | Case No. 2022-00217PQ |
| Requester | Special Master Jeffery W. Clark |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| OHIO DEPARTMENT OF HEALTH | |
| Respondent | |

{¶1} This case arises from a journalist's public records request for the Ohio death certificate database, composed of data received from local officials and maintained by the Ohio Department of Health (ODH). Requester Lauren Standifer, a former reporter for The Plain Dealer and now a freelance data journalist, intends to document the demographics, timing and location of deaths during the Covid pandemic. He states that

> death certificate information, including location of death, manner of death, race, ethnicity, marital status, occupation and industry is a public record. Moreover, there is a compelling public interest in the release of this data as the state grapples with widespread fatalities caused directly and indirectly by the coronavirus pandemic. As demonstrated by the spike in deaths from the omicron coronavirus variant in winter 2021-2022, high numbers of additional casualties continue to be possible. Data on which demographics and occupations were most likely to die due to the pandemic in 2020 is of critical importance to future policies regarding Ohio's pandemic response.

(Complaint at 1.)

{¶2} For many years ODH has released all death certificate data to all requesters, including to news media reporting on Ohio death and disease trends. However, ODH recently "reassessed" its interpretation of R.C. 3701.17(B)[1] and argued successfully to the Tenth District Court of Appeals that releasing a cause of death linked to a decedent's

---

[1] The R.C. 3701.17(B) exemption for "personal health information" was enacted as part of 2003 H.B. 6, eff. 2-12-04. ODH was presumably well aware of this provision, yet from 2004 until at least 2019 produced all or any part of the Death Data File including cause of death to anyone who asked.

identity is prohibited by that statute. ODH now refuses to produce *any* death data download that includes causes of death. ODH asserts that even when names and other personal identifiers are redacted, the remaining data might conceivably link a cause of death to a decedent by "triangulation."

**The Public Records Act**

{¶3} The purpose of the Public Records Act "is to expose government activity to public scrutiny, which is absolutely necessary to the proper working of a democracy." *State ex rel. WHIO-TV-7 v. Lowe*, 77 Ohio St.3d 350, 355, 673 N.E.2d 1360 (1997). "Public records are one portal through which the people observe their government, ensuring its accountability, integrity, and equity while minimizing sovereign mischief and malfeasance." *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 16. This portal extends to compiled information on which government decisions are based, such as disease incidence records used to recognize and respond to the Covid-19 pandemic, and not just general summaries or records an office selectively shares.

> To hold otherwise would be to ignore that he people's right to know includes 'not merely the right to know a governmental body's final decision on a matter, but the ways by which those decisions were reached.' *See State ex rel. Gannett Satellite Information Network v. Shirey* (1997), 78 Ohio St.3d 400, 404, 1997 Ohio 206, 678 N.E.2d 557, *citing White*, 76 Ohio St.3d at 419, 667 N.E.2d 1223.

*Id.* at ¶ 26. The Public Records Act is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records. *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 6.

> The broad language used in R.C. 149.43 manifests the General Assembly's intent to jealously protect the right of the people to access public records. We are acutely aware of the importance of the right provided by the act and the vulnerability of that right when the records are in the hands of public officials who are reluctant to release them.

*Rhodes v. New Phila.*, 129 Ohio St.3d 304, 2011-Ohio-3279, 951 N.E.2d 782, ¶ 21.

**Public Records and Ohio's News Media**

{¶4} Especially when records are in the hands of public officials who are reluctant to release them, news media work on behalf of the public to gather and report the factual data underlying government operations:

> "(I)n a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press to bring to him in convenient form the facts of those operations. Great responsibility is accordingly placed upon the news media to report fully and accurately the proceedings of government, and official records and documents open to the public are the basic data of governmental operations."

*Kallstrom v. City of Columbus*, 165 F.Supp.2d 686, 697 (S.D.Ohio 2001), quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). "Thus, the Supreme Court has concluded, 'an untrammeled press [is] a vital source of public information', and an informed public the essence of working democracy." (Citations omitted.) *Id.* at 698. Because news media seek access to public records as a public watchdog, "the health and safety of this democracy depend on a press that can function without additional burdens being imposed based on its ability to publish information concerning government activities." *Kallstrom* at 703. The Public Records Act facilitates media access to critical government information such as ODH's death database.

**The Request**

{¶5} On April 20, 2021, Standifer asked ODH "when the Death Data File for 2020 might be available this year." (Complaint at 2.) In response, ODH advised that "We close the file at the end of July early August. It should then be available and complete by the end of August." (*Id.*) On August 24, 2021, Standifer reminded ODH it was time to send "the death certificate master file from 2020, including all data fields," noting parenthetically that "(ODH has provided the full, un-redacted file in the past to myself and The Plain Dealer when I worked there.)" (*Id.* at 2-4.) However, ODH produced only a partial file from which ODH had redacted causes of death, advising Standifer for the first time that the withheld data was exempt from disclosure under R.C. 3701.17 as protected health information. (*Id.* at 7-1219) Standifer wrote again, protesting that

> in 2017 the Ohio Department of Health provided the Cleveland Plain Dealer with all the fields I have requested, including detailed information about cause of death, for all individuals who died in Ohio of opioid overdoses between 2010 and 2016 * * *. Can you explain why the department did not

consider these fields protected health information in 2017, but does now? Did the department violate health privacy laws in 2017?

Also, can you explain how occupation, race and marital status are considered protected health information?

(*Id.* at 6.) ODH declined to answer these questions. (*Id.* at 8-9.)

{¶6} On March 11, 2022, Standifer filed a complaint under R.C. 2743.75 alleging that ODH had denied him access to public records in violation of R.C. 149.43(B). Following unsuccessful mediation ODH filed a response to the complaint and a motion to dismiss (Response) on May 5, 2022. On October 6, 2022, Standifer filed a reply. On October 7, 2022, ODH filed a supplemental response. On February 1, 2023, ODH filed an affidavit in response to a December 21, 2022 court order.

**Burden of Proof**

{¶7} The requester in an action under R.C. 2743.75 bears an overall burden to establish a public records violation by clear and convincing evidence. *Hurt v. Liberty Twp.*, 2017-Ohio-7820, 97 N.E.3d 1153, ¶ 27-30 (5th Dist.). The requester bears an initial burden of production "to plead and prove facts showing that the requester sought an identifiable public record pursuant to R.C. 149.43(B)(1) and that the public office or records custodian did not make the record available." *State ex rel. Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 33.

{¶8} ODH does not dispute that the Ohio death certificate database contains records that are public other than as exempted by a specific statute. However, ODH now refuses to make available any subset of the death certificate database that includes cause of death.

**Motion to Dismiss**

{¶9} To dismiss a complaint for failure to state a claim upon which relief can be granted, it must appear beyond doubt the claimant can prove no set of facts warranting relief after all factual allegations of the complaint are presumed true and all reasonable inferences are made in claimant's favor. *State ex rel. Findlay Publishing Co. v. Schroeder*, 76 Ohio St.3d 580, 581, 669 N.E.2d 835 (1996). As long as there is a set of facts consistent with the complaint that would allow the claimant to recover, dismissal for failure

to state a claim is not proper. *State ex rel. V.K.B. v. Smith*, 138 Ohio St.3d 84, 2013-Ohio-5477, 3 N.E.3d 1184, ¶ 10.

**{¶10}** ODH moves to dismiss the complaint on the grounds that 1) to satisfy Standifer's request the office would be required to reproduce the entire database or else search for data, compile the data and create a new record (Response at 8-10), and 2) Standifer is seeking protected health information (PHI) that is exempt from disclosure pursuant to R.C. 3701.17(B). (*Id.* at 10-12.) On review, Standifer's request is clearly limited to the year 2020 rather than "the entire database." Further, it is not plain on the face of the complaint that the database consists entirely of PHI, or that redacting PHI from the database download would constitute creation of a "new record."

**{¶11}** As the matter is now fully briefed these defenses are subsumed in the arguments to deny the claim on the merits. It is therefore recommended the motion to dismiss be denied.

### ODH Ability to Produce All or Any Part of the Death Database Without Creating a New Record

**{¶12}** This court has repeatedly found that ODH is able to produce downloads of the death database narrowed by requested date ranges and data columns – without any apparent technical problems, without obtaining new software, and without any need to write new computer code. ODH has downloaded as little as a single uncertified death certificate and as much as multiple years of the entire database.

**{¶13}** In 2017, ODH helpfully told one requester that although it did not have an electronic copy of a particular 2001 death certificate,

> we do have the data on a statistical file [presumably the EDRS or EnterpriseDataWarehouseSecure]. John Paulson [ODH/VS Statistical Manager until 2022] will create a statistical file in Excel and since it's so small he will e-mail it directly to you. The statistical file will contain *all of the information from the death certificate and more*.

(Emphasis added.) *info4um.com v. Cincinnati*, 2017-00878PQ, 2018-Ohio-1553, ¶ 7. Also in 2017, ODH provided Standifer and The Cleveland Plain Dealer with a download of the Death Data File filtered to include only opioid-related deaths between 2010 and 2016. (Complaint at 6; Reply at 1-2.) The download included all of the information from thousands of death certificates:

| | |
|---|---|
| Year of Death | Underlying cause of death |
| First name | Multiple cause of death |
| Last name | Cause of death 1 |
| Month of death | Cause of death 2 |
| Day of death | Cause of death 3 |
| Sex | Cause of death 4 |
| Age in Years | How injured |
| Race | Other condition |
| Hispanic | Alcohol all types |
| Education | Heroin |
| Marital status | Benzodiazephines |
| Occupation | Unspecified drugs |
| Industry | Opiates other |
| County of death | Methadone |
| Address place of death | Other Synthetic Opiates |
| City of death | Cocaine |
| Zip of death | Other Narcotics |
| State of death | Hallucinogens |
| County of residence | Barbituates |
| Address of residence | Alcohol Ethanol |
| City of residence address | Methanol |
| City of residence code | Alcohol unspecified |
| Zip of residence | Opiates all |
| Place of death | Prescription opiates |
| Place of injury | Fentanyl and Analogues |
| Injury intent | Carfentanil |

(Reply at 3-2585.)[2]

---

[2] On Oct. 6, 2022, ODH filed a request to seal the copy of this 2017 death certificate database download of opioid deaths, which Standifer filed in this action to evidence ODH's past practice. The request was denied, as explained in detail in the Special Master's Order dated Oct. 31, 2022.

{¶14} In *Walsh v. Ohio Dept. of Health*, 2022-Ohio-272, 183 N.E.3d 1281 (10th Dist.), requester Walsh recounted ODH's past practice of providing death database records including the cause of death. *Id.* at ¶ 5, 7. Although the court held that ODH's prior statutory interpretation permitting such disclosure was inconsequential to the court's own analysis of the statute, it did not doubt the past disclosures. *Id.* at ¶ 21.

{¶15} In *Miller v. Ohio Dept. of Health*, Ct. of Cl. No. 2020-00618PQ, 2021-Ohio-996, Miller asked ODH to "run a report for all Causes of Deaths in Ohio coded as Covid-19 (UO7.1)" with decedent identifying information. *Id.* at ¶ 3. The ODH Chief of Vital Statistics initially responded that she would get back to Miller "when we return to normal operations," but in September 2020 denied the request because "[m]y bureau is no longer doing customized[3] requests for data." *Id.* at ¶ 3. Miller submitted evidence that ODH had used its existing software to provide him with similar reports in the past.

> Miller submits two past ODH/VS death database reports using Death Data File categories for the data columns and IC-10 codes for cause of death. The reports are for specified causes of death in a three-year period, matched with decedent's names and customized information. * * * ODH/VS acknowledges that "[w]e used to provide customized datasets" * * * and does not deny that it provided Miller with the subsets of EDRS death certificate data in Exhibits F and H. * * (Internal citations omitted.) *Id.* at ¶ 15-16.

{¶16} The court directed ODH to file a detailed explanation of the EDRS and Enterprise DataWarehouseSecure death database contents and export capabilities, to which the Special Master applied the Database Rule:

> If a computer as programmed can produce requested output, the output is deemed to already exist for the purposes of a public records request. *State ex rel. Scanlon v. Deters*, 45 Ohio St.3d 376, 379, 544 N.E.2d 680 (1989). See *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, Slip Opinion No. 2020-Ohio-5371, ¶ 74 ("If a record containing exempt and nonexempt information can, through reasonable computer programming, produce the requested output, the record is deemed to already exist," citing Scanlon); *State ex rel. Gambill v. Opperman*, 135 Ohio St.3d 298, 2013-Ohio-761, 986 N.E.2d 931, ¶ 4, 12, 16, 32-35 (electronic database was capable of compiling deeds, photographs, and other data into specific tax maps based on the operator's search criteria); *Eye on Ohio v. Ohio Dept. of Health*, Ct.

---

[3] *Sic.* Chief Sorrell referred to any dataset that was readily available, but had not previously been downloaded with the exact parameters of the request, as "customized." The evidence showed that this nomenclature was misleading. *Miller* at ¶ 3, 13-14.

of Cl. No. 2020-00279PQ, 2020-Ohio-5278, ¶ 4, fn. 2 (Covid-19 data requested from ODH Surgenet system).

 * * * Miller is not required to forfeit the value that has been added to death certificate records by ODH/VS' manner of storage and organization. *State ex rel. Margolius v. Cleveland*, 62 Ohio St.3d 456, 459-460, 584 N.E.2d 665 (1992). As the Fourth District Court of Appeals summarized:

> The basic tenet of *Margolius* is that a person does not come - like a serf - hat in hand, seeking permission of the lord to have access to public records. Access to public records is a matter of right. The question in this case is not so much whether the medium should be hard copy or diskette. Rather, the question is: Can a government agency, which is obligated by law to supply public records, impede those who oppose its policies by denying the value-added benefit of computerization? * * *

*State ex rel. Athens Cty. Property Owners Assn. v. Athens*, 85 Ohio App.3d 129, 131, 619 N.E.2d 437 (4th Dist.1992). See also *Parks v. Webb*, Ct. of Cl. 2017-00995PQ, 2018-Ohio-1578, ¶ 10-17.

Ohio death certificates stored in ODH/VS databases are compiled using taxpayer dollars, on equipment purchased with taxpayer dollars, by personnel paid with taxpayer dollars. The record provides clear and convincing evidence that ODH/VS keeps the requested data in these databases, has produced "customized datasets" of this data in the past, and remains capable of producing the requested output.

*Miller* at ¶ 18-20.

{¶17} The death data requested in *Knapp v. Ohio Dept of Health*, Ct. of Cl. No. 2021-00191PQ, 2021-Ohio-3130, was virtually identical to that in *Miller. Id.* at ¶ 6. In *Knapp*, ODH again admitted that its database software could produce the requested EDRS data, filtered for Covid-19 deaths without reprogramming, stating:

> The EnterpriseDataWarehouseSecure, as a data warehouse, has a capability to accept instructions to extract certain information and download that information into another format and organize that information into a report. The Department can extract the information requested by Knapp and put it into a report.
>
> (Response at 6.)

*Id.* at ¶ 7. The Special Master again applied the Database Rule:

> A computer system that can produce requested data based on "instructions" is "already programmed to produce the desired printout" and the requested report is deemed to already "exist" for the purpose of an R.C. 149.43 request. *State ex rel. Scanlon v. Deters*, 45 Ohio St.3d 376, 379, 544 N.E.2d

680 (1989). Instructing database software to compile and produce such output is the electronic equivalent of directing an employee to locate existing records in labeled manilla folders, or use the index of a records binder, or follow computer directory paths to text files — which is to say retrieval according to the manner in which requested records are organized and maintained. Database records are organized and maintained through database software.

Database access law is grounded in both the public nature of the data, and the enormous value added through database functionality. "The law does not require members of the public to exhaust their energy and ingenuity to gather information which is already compiled and organized in a document created by public officials at public expense." *State ex rel. Cincinnati Post v. Schweikert*, 38 Ohio St.3d 170, 173-174, 527 N.E.2d 1230 (1988). "Similarly, a public agency should not be permitted to require the public to exhaust massive amounts of time and resources in order to replicate the value added to the public records through * * * a data base containing such records." *State ex rel. Margolius v. Cleveland*, 62 Ohio St.3d 456, 460, 584 N.E.2d 665 (1992). See also *State ex rel. Athens Cty. Property Owners Assn. v. Athens*, 85 Ohio App.3d 129, 131, 619 N.E.2d 437 (4th Dist.1992).

The very design, purpose, and office use of databases is to repeatedly "extract a unique subset of data from a database and organize that data into a report that has heretofore not existed." (Response at 6.) ODH's claim that any "uniqueness" of output sought by a public records request justifies its denial ignores clear case law requiring production of database-capable records regardless of whether the agency has previously instructed production of similar output. The "database rule" mandates public access to the *functionality* of public databases, not just repetition of past agency use.

(Emphasis sic.) *Knapp* at ¶ 8-11.

{¶18} Directly relevant to this case, in response to an October 2020 request from Columbus Dispatch reporter Randy Ludlow, ODH "downloaded and delivered all selected EDRS data *except the names and addresses of decedents.* (Emphasis added.) (Complaint at 3-19.)" *Ludlow v Ohio Dept of Health*, Ct. of Cl. No. 2021-00040PQ, 2021-Ohio-2651, ¶ 2. Based on documents and affidavits submitted by ODH to this court the Special Master found that

A data dictionary or Death Data File layout, labeled the "Monthly statistical mortality file description" was provided to Ludlow to inform his selection of available death certificate .csv columns. (Response, Sorrell Aff. Exh. B.) The EDRS is programmed with a Reports function, supported by a Reports Wizard. (Sorrell Aff. – Exh. G – EDRS Menu Screen Shots.) EDRS is also programmed with a Batch > Export function used by, among others, funeral directors to download data sorted by date and available fields. (Id., Exh. D,

p. 50-60 and Exh. G.) ODH can and has exported multiple categories of the EDRS database, up to and including the full Death Data File set. (Response, Sorrell Aff. – Exh. A at ¶ 4.) At least two department databases – the EDRS itself and the EnterpriseData WarehouseSecure Secure Mortality Module – are programmed to pull and export data from the EDRS Death Data File. The latter can export any or all Death Data File content in various formats. (Response at 3.) Individual columns can be redacted. (Complaint at 7.) For more detail on the capabilities of ODH database software and relevant law, see *Miller v. Ohio Dept. of Health*, Ct. of C. No. 2020-00618PQ, 2021-Ohio-996 at ¶ 10-20.

*Id.* at ¶ 8. The Court of Appeals affirmed that ODH had provided Ludlow with

a digital spreadsheet that contained almost all of the information Ludlow requested. For deaths occurring during the selected period in 2020, ODH provided information that included the sex, age, race, birth date, and marital status of each recorded decedent; the date, time, and place of death; and the manner and cause of death.

*Ludlow v. Ohio Dept. of Health*, 10th Dist. Franklin No. 21AP-369, 2022-Ohio-3399, ¶ 2.

**{¶19}** On September 23, 2021, ODH provided Standifer with a subset of "death data from our secure file location in Microsoft OneDrive." (Complaint at 7.) The columns of this partial download from the death certificate master file[4] included:

FileDate

LName

FName

MName

Suffix

SEX

(*Id.* at 9-1220.) The 138,350 entries disclosed in this download were loosely ordered from older to more recent file dates. ODH did not mention any difficulty in exporting this partial death data file, from which many other data columns as well as the date ranges on either side of 2020 were necessarily deleted, i.e., redacted.

**{¶20}** None of ODH's robust data export capability documented above has been disturbed in appeals of the cited cases. Moreover, in the case of *WCPO-TV v. Ohio Dept.*

---

[4] ODH identified Standifer's request as seeking records from "the death certificate master file from 2020" when stating that its email of Sept. 23, 2021 "provided records *responsive to your request*." (Emphasis added.) (Complaint at 8 – Letter dated Sept. 28, 2021.)

*of Health*, Ct of Cl. No. 2020-00513PQ, 2021-Ohio-1151 ODH neither objected to nor appealed the Special Master's findings of its capability to produce requested data from the Electronic Death Registration System (EDRS). *Id.* at ¶ 14-17. Asked by the Special Master in this action to affirm that concession, ODH cavils now that

> it does not produce reports *directly* from EDRS. ODH must transfer data from EDRS to the Secure Warehouse environment which then allows ODH to extract data using the third-party software (SAS).

(Emphasis added.) (Supp. Response at 5.) The attempted distinction is disingenuous. As it attests below, ODH transfers EDRS data daily to the Secure Warehouse environment as a routine office function. From the constantly updated Secure Data Warehouse, ODH can download the dataset to a spreadsheet or to a .csv file without making a special transfer from the EDRS and without using "third-party software (SAS)."[5] Nor is there any legal significance to the use of more than one software application to produce redacted public records from a database.

{¶21} Redaction of exempt data such as names and addresses from a database does not constitute "creating a new record" and the office is obliged to use "reasonable computer programming" to obscure or delete the protected data:

> R.C. 149.43(B)(1) provides for redactions so that nonexempt portions of a public record are made available to the public: "If a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt." If a video is not exempt in its entirety, those portions that are exempt may be withheld by redaction, but the remainder must be released. *See, e.g., State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, ¶ 45-50.

> As to the prosecutor's contention that the trial court's order unlawfully requires it to create a new record, R.C. 149.43(B)(6) requires a public office to permit the requester

>> to choose to have the public record duplicated * * * upon the same medium upon which the public office or person

---

[5] SAS is a statistical software suite that can mine, alter, manage and retrieve data, and perform statistical analysis on it. en.wikipedia.org/wiki/SAS_(software) and sas.com/en_us/home.html. (both accessed Feb. 3, 2023.) However, Standifer requested that ODH simply produce the death data, not to perform any statistical analysis on it.

> responsible for the public record keeps it, or upon any other medium upon which the public office or person responsible for the public record determines that it reasonably can be duplicated as an integral part of the normal operations of the public office or person responsible for the public record.

> If a record containing exempt and nonexempt information can, *through reasonable computer programming, produce the requested output*, the record is deemed to already exist for purposes of R.C. 149.43. *See State ex rel. Scanlon v. Deters*, 45 Ohio St.3d 376, 379, 544 N.E.2d 680 (1989), overruled on other grounds, *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 426-427, 639 N.E.2d 83 (1994), *overruled on other grounds, State ex rel. Caster*, 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 47.

> Because the video here clearly existed, the order to duplicate it with redactions that would conceal exempt information and disclose nonexempt information did not require the prosecutor to create a new record. The Court of Claims accordingly did not err by ordering that the video be made available subject to limited redactions for peace officer safety.

(Emphasis added.) *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 73-75.

{¶22} When pressed, ODH affirms its redaction capabilities. In the current action, the Data Administration Manager of ODH's Bureau of Vital Statistics (ODH/VS) admits that

> Most, but not all, EDRS data is transferred daily to the ODH Ohio Public Health Information Warehouse (referred to as the EnterpriseData WarehouseSecure) secure mortality dataset using a specially created software "bridge" programmed to perform this specific task. On August 24, 2021, the date of the request, the secure mortality dataset could be exported as a spreadsheet from the Warehouse. * * *

> ODH/VS staff are capable of manually deleting or redacting the contents of selected data columns from a mortality data file exported as a spreadsheet from the Warehouse to create a custom report.

(Supp. Response, Priddle Aff. ¶ 5.b.-6.a.)

> The secure mortality download file includes names, addresses, dates of birth, medical causes of death, race codes, location codes, cause of death codes, and more.

(*Id.* at ¶ 8.c.) The mortality dataset can also be exported in .csv file format. (*Id.* at ¶ 10.a.)

There is no evidence that ODH *must* use SAS software to export, download, or print out

the Data Warehouse dataset but it is irrelevant to its public records obligations whether it chooses to do so or not.

**{¶23}** The recitation of ODH's provision prior to 2019 of open and transparent public access to the Death Data File, and its continuing capability to download and disclose all or any selected portion of the database, is not made to invoke the principle of estoppel but only to affirm the fulsome evidence of ODH's past and present ability to download Standifer's requested data with any redactions required.

**{¶24}** "Records" includes documents, items within them, and reports or files aggregated from separate records. *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 24, fn. 3; *State ex rel. Data Trace Info. Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 28-38.The Special Master finds clear and convincing evidence that Standifer requested an existing "record" from ODH – the death certificate database – and that ODH is capable and practiced at redacting protected name, address, and other data columns from that record as necessary.

### Duty of ODH to Redact only Exempt Information

**{¶25}** The Public Records Act provides that a public office may redact from an otherwise public record only information falling squarely under an exemption:

> If a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt.

R.C. 149.43(B)(1). *See also Cuyahoga Cty. Bd. of Health v. Lipson O'Shea Legal Group*, 2013-Ohio-5736, 6 N.E.3d 631, ¶ 5, 29-31 (8th Dist.), affirmed by *Cuyahoga Cty. Bd. of Health v. Lipson O'Shea Legal Group*, 145 Ohio St.3d 446, 2016-Ohio-556, 50 N.E.3d 499, ¶ 4, 12; *State ex rel. Beacon Journal Publ. Co. v. Bond*, 98 Ohio St.3d 146, 2002-Ohio-7117, 781 N.E.2d 180, ¶ 13.

**{¶26}** It is well-settled that public offices may not withhold records merely because of a policy preference for confidentiality. *State ex rel. Consumer News Serv., Inc. v. Worthington City Bd. of Edn.*, 97 Ohio St.3d 58, 2002-Ohio-5311, 776 N.E.2d 82 at ¶ 46, 54.

> "[I]n enumerating very narrow, specific exceptions to the public records statute, the General Assembly has already weighed and balanced the competing public policy considerations between the public's right to know how its state agencies make decisions and the potential harm, inconvenience or burden imposed on the agency by disclosure."

*State ex rel. James v. Ohio State Univ.*, 70 Ohio St.3d 168, 172, 637 N.E.2d 911 (1994). Records custodians are not authorized to create new or expanded exceptions based on a balancing of interests or generalized privacy concerns. *WBNS TV, Inc. v. Dues* at ¶ 29-36. The General Assembly is the ultimate arbiter of public policy, and a public office may not withhold records simply because it disagrees with the policies behind the law permitting their release. *Id.* at ¶ 37. See also *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, ¶ 36-45 (names and addresses of foster parents).

{¶27} For example, where R.C. 149.43(A)(2)(a) permitted an office to withhold records within a criminal investigatory file, the release of which "would create the high probability of disclosure of" the identity of an uncharged suspect, the Supreme Court found that

> For most of these records, if the sheriff's office redacts the priests name, the name, location, and diocese of the church he worked at, and other specific identifying information, the disclosure of the records will not create a high probability of disclosure of the priest's identity. For example, after the priest's name and specific identifying information are redacted, the call record does not disclose the priest's identity.

*State ex rel. Rocker v. Guernsey Cty. Sheriff's Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327, ¶ 14. The Court ruled this way despite the fact that the person making the request was one of the alleged victims of the crime and was thus well aware of the uncharged suspect's identity. *Id.* at ¶ 1-2. The Court emphasized that "[b]y so holding, we adhere to our strict construction of exceptions to the Public Records Act as well as our duty to resolve any doubt in favor of access to public records." *Id.* at ¶ 16.

{¶28} Similarly, in *State ex rel. ESPN, Inc. v. Ohio State Univ.,* 132 Ohio St.3d 212, 2012-Ohio-2690, 970 N.E.2d 939, OSU was permitted to redact only specific personally identifiable information from records it had tried to withhold in full. "With the personally identifiable information concerning the names of the student-athlete, parents, parents' addresses, and the other person involved redacted, FERPA would not protect the

remainder of these records." *ESPN* at ¶ 33-35. The Court found that disclosure of government activity in the non-redacted remainder of such records satisfies a core purpose of the Act: "The Public Records Act serves a laudable purpose by ensuring that government functions are not conducted behind a shroud of secrecy." *ESPN* at ¶ 40.

**{¶29}** The Special Master finds that ODH may redact from the death certificate file only information falling squarely under R.C. 3701.17(B), and must disclose the rest.

### R.C. 3701.17(B) Does Not Prohibit Disclosure of Anonymized Death Data

**{¶30}** While its current case law holds that R.C. 3701.17(B) prohibits disclosure of "protected health information" from the death certificate database, the Tenth District has *not* ruled that R.C. 3701.17(B) prohibits disclosure of all other data in a download that includes cause of death, so long as name and residential address are not included.[6] For example, without expressing any concern that this disclosure was prohibited, the *Ludlow* court noted that

> ODH provided Ludlow with a digital spreadsheet that contained almost all of the information Ludlow requested. For deaths occurring during the selected period in 2020, ODH provided information that included the sex, age, race, birth date, and marital status of each recorded decedent; the date, time, and place of death; *and the manner and cause of death.*

(Emphasis added.) *Id.* at ¶ 2. The Tenth District explained that

> disclosure of a decedent's name and address, along with the cause of the decedent's death, would reveal the decedent's past physical health status or condition, as well as the identity of the individual. Consequently, the record Ludlow sought in his request contained protected health information, which ODH properly withheld pursuant to R.C. 3701.17(B).

*Ludlow v. Ohio Dept. of Health*, 10th Dist. Franklin No. 21AP-369, 2022-Ohio-3399, ¶ 21.[7]

> In this action ODH asserts for the first time that

> there are *no* categories of the death certificate data withheld by ODH in this case that could be included in the responsive report sought by Standifer. A

---

[6] Although the Tenth District has not found it necessary to rule on ODH's ability to produce the requested datasets without reprogramming, it has recognized that "Information that is in a summary, statistical, or aggregate form and that does not identify an individual is a public record under section 149.43 of the Revised Code and, upon request, shall be released by the director." R.C. 3701.17(C). *Knapp* at ¶ 10. The databases are arguably information in "summary, statistical, or aggregate form."

[7] The Supreme Court has granted discretionary appeal of *Ludlow*, with potentially dispositive impact on the outcome of this case. *Ludlow v. Ohio Dept. of Health,* 2023-Ohio-212 (Jan. 31, 2023).

combination of *any* series of fields could disclose "protected health information."

(Emphasis added.) (Supp. Response at 11-12.) This proposition contradicts ODH's production of multiple columns of death certificate data in response to public records requests made both before and since its 2019 "reassessment."

**{¶31}** ODH's assertion that the cause of death column(s) cannot be released in compliance with R.C. 3701.17 if paired with *any* of the 50 or so other columns in the death certificate database is ludicrous. It is obvious that many combinations of death data with other columns could be produced without associating a cause of death with an individual decedent. ODH has agreed to a wide variety of redacted releases of the Death Data File throughout recent litigation, up until the filing of its supplemental response in this action. Indeed, ODH exports such a combination of EDRS death data and posts it online (Response at 3, Fowler Aff. at ¶ 4.b., Nagy Aff. at ¶ 6), where any visitor can sort mortality information by cause of death, locations, years, age at death, gender, and other Death Data File categories.[8]

**{¶32}** The Special Master is not persuaded that no other death data category can be released with cause of death data without disclosing personal health information. Based on ODH's practice up to and including the *Ludlow* case, the Special Master finds that redaction of decedents' name and address of residence columns is sufficient to comply with the exemption.

### ODH's Interpretation of Exemption and Redaction Statutes is not Entitled to Deference

**{¶33}** It is the role of the judiciary, not administrative agencies, to determine what a statute means. *TWISM Enters., L.L.C. v. State Bd of Registration for Profl. Engrs. & Surveyors*, ¶ 3, 28. The judicial branch is never required to defer to an agency's interpretation of the law. *Id.* at ¶ 36-43. If a court finds the text of a law ambiguous and

---

[8] See Ohio Public Health Information Warehouse, https://publicapps.odh.ohio.gov/EDW/ DataBrowser/ Browse/Mortality (Accessed Feb. 2, 2023.) ODH states that the online Warehouse only allows the public to filter the data through a Disclosure Limitation Standard that suppresses results which could conceivably be used to discover the identity of an individual decedent through "triangulation." (Fowler Aff. at ¶ 4-5) Although this filter has been in effect for 20 years (*Id.* at ¶ 5), ODH does not claim to have applied it to any copies of the death data file disclosed to public records requesters over the past 19 years. ODH failed to raise this issue in its initial response to the complaint and has therefore waived it.

chooses to consider an administrative agency's interpretation, it will give that interpretation only the weight justified by its persuasive power, e.g., the thoroughness evident in its consideration, the validity of its reasoning, and its consistency with earlier and later pronouncements. *Id.* at ¶ 46.

{¶34} The Special Master recommends the court find ODH's interpretation prior to 2019 was a consistent and reasonable application of statutory language, and that its increasingly secretive interpretations since then are inconsistent and unreasonable. ODH offers no evidence that it gave its sudden retreat from past practice thorough consideration, stating only that it had "reassessed" the scope of R.C. 3701.17. (Priddle Aff. I at ¶ 5(c)(iii); Oct. 7, 2022 Reply to Special Master's Order at 2; Priddle Aff. II at Response to Item 3 – last ¶.) ODH's newest and most draconian interpretation is even less consistent with its pre-2019 interpretation, and conceptually implausible. ODH's interpretation of the relevant statutes prior to 2019 was consistent with statutory language and with the requirement in public records law that exemptions be construed strictly against public offices and in favor of disclosure. *Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 7.

**Alternative Methods to Redact the Database**

{¶35} ODH can produce all categories of death data from the Data Warehouse database as either a spreadsheet, or a .csv file. It is capable of using the built-in commands of spreadsheets (e.g., Excel) or other software to electronically delete date ranges and data category columns. Even if it could not do so electronically, ODH is also capable of printing the full download of the file and manually blacking out, whiting out, or otherwise obscuring name and address columns. Both of these processes constitute redaction as defined in R.C. 149.43,[9] and do not constitute creation of a "new record."

{¶36} It cannot be emphasized enough that every bit of data in the Death File is publicly available to any person, including the media – if they are willing to pay ODH substantial fees to print out thousands of death certificates. Alternatively, cause of death data may be obtained from the public reports of Ohio's county coroners at a far lesser

---

[9] R.C. 149.43(A)(13): "Redaction" means obscuring or deleting any information that is exempt from the duty to permit public inspection or copying from an item that otherwise meets the definition of a "record" in section 149.011 of the Revised Code.

price. R.C. 313.09 and R.C. 313.10(A)(1) and (B). The General Assembly has expressly made the cause of death of any individual Ohio decedent available to any person who wishes to know that fact. ODH grasping at strained arguments to release as little as possible of this elsewhere public data is the antithesis of the openness and transparency promoted by the Public Records Act.

{¶37} "'The rule in Ohio is that public records are the people's records, and that the officials in whose custody they happen to be are merely trustees for the people.'" *State ex rel. Patterson v. Ayers*, 171 Ohio St. 369, 371, 171 N.E.2d 508 (1960). ODH has a duty to disclose, to the greatest extent permitted, the factual, informative, and indisputably public records that taxpayers have paid for and the public desires to see.

**Conclusion**

{¶38} The Special Master recommends the court GRANT requester's claim for production of the requested death database, with redaction of the names and addresses of all decedents to satisfy current law prohibiting disclosure of information that connects an individual decedent to a past physical or mental health status or condition. It is recommended that requester be entitled to recover from respondent the amount of the filing fee of twenty-five dollars and any other costs associated with the action that were incurred by requester. It is further recommended that court costs be assessed to respondent.

{¶39} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

_____
JEFF CLARK
Special Master

**Filed February 10, 2023**
**Sent to S.C. Reporter 3/2/23**